Merritt and others *vs.* Scott and Beal.

—————————————

No. 78.—SHIMEI MERRITT and others, plaintiffs in error, *vs.* WM. H. SCOTT and THOMAS N. BEAL, administrators of WM. F. SCOTT, defendants.

[1.] Marriage articles will be executed *in favor* of all persons coming within the scope of the marriage consideration, and at their instance, but not at the instance of mere volunteers.

[2.] Those having natural claims upon the parties, such as the wife and offspring, and those claiming under or through them, alone come within the scope of the marriage consideration.

[3.] The fact that collaterals are first mentioned in the limitations of the articles, does not bring them within the reach and influence of the agreement.

[4.] Where a Court of Equity executes articles in favor of persons within the scope of the marriage consideration, it will, at the same time, execute them also as to volunteers—it being the rule of Chancery to do nothing by halves.

[5.] Where, upon application to a Court of Equity, the marriage articles are executed partially, viz: in behalf of one of the settlers, without being executed as to the volunteers: *Held*, that upon a subsequent application to a Court of Equity, at the instance of volunteers, the former decree cannot be invoked in their favor.

In Equity, in Baldwin Superior Court. Tried before Judge MERRIWETHER, February Term, 1849.

In the year 1810, John Neves and Catherine Jewell, in contemplation of marriage, entered into the following articles:

"GEORGIA, BALDWIN COUNTY:

"Articles of agreement made and entered into the 17th day of February, in the year 1810, between John Neves and Catherine Jewell, widow and relict of the late Thomas Jewell, deceased, all of the State and County aforesaid, as follows, viz: Whereas, a marriage is shortly to be had and solemnized between the said John Neves and Catherine Jewell, widow as aforesaid, are as follows, viz: that all the property, both real and personal, which is now, or may hereafter become, the right of the said John and Catherine, shall remain in common between them, the said husband and wife, during their natural lives; and then, should the said Catherine become the longest liver, the property to continue hers so long as she shall live, and at her death the estate to be divided between the heirs of the said Catherine and the heirs of the said John Neves, share and share alike, agreeable to the Distribution Laws of this State, made and provided; and, on the other hand, should the said John become the longest liver, the property to remain in the manner and form above.

In witness whereof, the said John and Catherine have hereunto set their hands and affixed their seals, the day and year above written.

JOHN NEVES, [L.S.]

her
CATHERINE ⋈ JEWELL, [L.S.]
mark.

Test:          CORNELIUS MURPHY,
                    JESSE WARD.

The marriage was shortly thereafter consummated, and in the year 1828, John Neves died, leaving Catherine Neves, she surviving.

John Neves left a will, by which he desired, that immediately after his decease, and proof of his will, "that the Court of Ordinary should appoint a proper number of fit persons, who should be commissioned to divide his whole estate, both real and personal, between his wife, Catherine Neves, and his heirs, thereinafter named ; that is, that his said wife, Catherine Neves, should have one-half of his whole estate, both real and personal, as aforesaid, for her own proper use, to her and her heirs forever; and that the other or remaining half of his whole property or estate, he disposed of and bequeathed in the following manner, that is to say, that the whole of his half of his said estate he gave and bequeathed to George W. Rowell, son of Capt. Richard Rowell, of the County of Baldwin aforesaid, to him and his heirs forever." Richard Rowell and Myles Green were named as the executors of this will; and by virtue thereof, Richard Rowell, who qualified as executor, took possession of all the estate, amounting to $20,000, of said John Neves.

In 1829, Catherine Neves filed in the Superior Court of Baldwin County, her bill in Equity, charging the above facts, and farther, that the said John Neves owed but few debts, and that she offered to assume the payment of them, and praying an injunction upon Rowell from farther intermeddling with the said property, and that he might be decreed to turn over and deliver the whole of said property to her, as provided in the articles of agreement.

Upon the trial of this bill at the July Term, 1835, the following verdict or decree was rendered :

" We, the Jury, find for the complainant a life estate in the property agreeably to the provisions of the marriage contract, leaving all other persons to contest their rights at her death ; and we farther find, that complainant do pay to defendant the sum of nine hundred and two 35-100 dollars, which have been allowed by the Special Jury at this term, upon an appeal from the Court of Ordinary, as expenses and costs incurred by the defendant in proving the will of John Neves, deceased, and resisting the marriage contract between John Neves and Catherine, his wife ; and we farther find for the complainant the costs of suit."

In the year 183—, Catherine Neves intermarried with one William F. Scott, and subsequently, in the year 1844, died, leaving no issue.

In 1845, Shimei Merritt, James Green and his wife, and Eli-

zabeth Hunter, the heirs at law and distributees of Catherine Neves, at the date of the marriage articles, filed a bill in Equity in the Superior Court of Baldwin County, charging that the property had largely increased, and praying that one-half of the same might be turned over and delivered by the said William F. Scott to the complainants.

Pending this bill, William F. Scott died, and his representatives were made parties.

On the trial at February Term, 1849, the foregoing facts being in evidence before the Jury, counsel for complainants requested the Court to charge the Jury—

*First,* that where the parties to a marriage contract or agreement, make no provision for, or stipulation in favor of the issue of the marriage, but make provisions for and stipulate for their heirs at law, in such case the heirs at law are within the marriage consideration, and are entitled to the aid of a Court of Equity, to enforce their rights according to the terms and provisions of the marriage contract.

*Second,* that the said Catherine, previous to her intermarriage, being possessed of a considerable estate, had a perfect legal right to make the contract, as set forth in the complainants' bill, with the said John Neves ; that said contract was binding on said John ; that the stipulations and provisions in said contract in favor of the heirs at law of said Catherine, are legal and such as a Court of Equity will enforce, and that, therefore, complainants are entitled to recover one-half of said estate, as it existed at the time of the death of the said Catherine, together with one-half of the increase of the female slaves since that time, and a reasonable hire for one-half of the negroes, and one-half the rent of the land.

*Third,* that by virtue of the decree rendered in the case of Catherine Neves *vs.* Richard Rowell, said Catherine became seized and possessed of an absolute legal estate of the whole property during her life, with contingent remainders to such persons as at her death might be next of kin or heirs at law of the said John Neves and the said Catherine Scott.

*Fourth,* that upon the death of said Catherine, said contingent remainders became vested in such persons as answered the description of next of kin or heirs at law of the said John and the said Catherine at that time, and that, therefore, the next of kin or

Merritt and others *vs.* Scott and Beal.

heirs at law of said Catherine are entitled to one-half of the whole estate.

*Fifth,* that the execution of the marriage contract, by virtue of the decree rendered in the case of Catherine Neves *vs.* Richard Rowell, in favor of the said Catherine, was, by operation of law, an execution in favor of those who were entitled in remainder after death, and from that time said contract ceased to be executory, and became executed as to all the parties in interest.

*Sixth,* that the said Catherine having asserted and maintained in a Court of Equity, her right under said marriage contract to the whole of said property during her life, and having enjoyed the same during that time, it is not competent for any one claiming by, through or under her, now to repudiate said contract and thereby defeat the claims of the heirs at law under such contract.

Which instructions the Court refused to give the Jury, and complainants, by their counsel, excepted.

The Court charged the Jury, that by the terms of the marriage articles, Neves took such a title to the property that he might dispose of the same absolutely at his death, subject only to the life estate of Mrs. Neves, she surviving him ; that a Court of Equity would not specifically execute marriage articles upon the application of any persons, except those who were within the scope of the marriage consideration, or claiming under such persons, and not upon the application of mere volunteers ; that the complainants were not within the scope of the marriage consideration, nor did they claim under those who were; that they were mere volunteers, and as such the Court would not decree the specific execution of the articles in their favor ; that while the Court would, upon a bill brought by persons within the scope of the consideration of the marriage, decree a specific execution throughout, as well in favor of the volunteers as the complainants, yet the decree of the Court in the case of Mrs. Neves against Rowell, as executor, was not such a partial execution as entitled the complainants to a farther execution in their favor ; that said decree expressly left open all the questions now presented by the complainants, to be litigated at the death of Mrs. Neves, and by requiring her to pay out of the property embraced in the marriage settlement, certain expenses incurred by the executor in reference to the estate of Neves, recognized the legal right of Neves to make an absolute disposition of said property, subject

Merritt and others *vs.* Scott and Beal.

to the life estate of Mrs. Neves; and that the complainants were not entitled to any relief, but that the Jury, under the law, should find for defendants.

To which charge of the Court complainants excepted.

CONE, for plaintiff in error.

ROCKWELL and W. C. DAWSON, for defendant.

The following points and authorities were submitted by Mr. CONE:

1st. Marriage articles and contracts will be enforced in favor of all persons who are within the marriage consideration. *Atherley on Marriage Settlements*, 126.   *Story's Eq.* §986, 987.

2d. Those persons are within the marriage consideration for whom the marriage contract *primarily* and *specially* provides, and the making provision for whom may reasonably be supposed to have been the motive, inducement and occasion for making the contract. *Goring vs. Nash*, 3 *Atk.* 185.   *Vernon vs. Vernon*, 2 *Peere Wms.* 600.   *Edwards vs. The Countess of Warwick, Ib.* 175.   *Stephens vs. Trueman*, 1 *Vesey, Sen.* 73.   *Ithell vs. Beane, Ib.* 214.   *Osgoode vs. Strode*, 2 *Peere Wms.* 245.   *Trevor vs. Trevor*, 1 *Ib.* 622.   *Laney vs. Fairchild*, 2 *Vernon*, 101.   1 *Levinty*, 150, 239.   1 *Chancery Cases*, 103.   2 *Story's Eq.* §986.   2 *Kent's Com.* 172.   1 *Atkins*, 265.   2 *Brown's Ch. Cases*, 494.   2 *Iredell's Eq. Reps.* 241.   2 *Hill's Ch. Reps.* 3.   *Tabb vs. Archer*, 3 *Henning & Munford*, 399.   1 *Ib.* 213.   3 *Atkins*, 646.   3 *Cruise's Dig.* 363.   *Holt vs. Holt*, 2 *Peere Wms.* 648.   1 *Reps. in Ch.* 84.

3d. Where Courts of Equity execute marriage articles or contracts at all, they execute them throughout. *Story's Eq.* §986. *Atherley*, 125.   *Osgoode vs. Strode*, 2 *Peere Wms.* 255.   2 *Ib.* 622. *Goring vs. Nash*, 3 *Atkins*, 186, 190.   *Tabb vs. Archer*, 3 *Henning & Munford*, 399.

4th. Courts of Equity will regard that as done which ought to have been done. 3 *Peere Wms.* 215.   1 *Ib.* 522.   2 *Hill's Ch. Reps.* 3.

5th. The decree in the case of *Neves vs. Rowell* was, upon its face and by its terms, a partial execution of said contract, and a Court of Equity never executes marriage articles or contracts in

part, but *in toto*. This Court will consider that as done which then ought to have been done, and decree accordingly.

6th. The legal effect of the decree in the case of *Neves vs. Rowell, Exr.* was to divest the personal representative of John Neves of all title to the property, and to vest the same in Mrs. Neves during her life, with contingent remainders to those who may be entitled according to the terms of the contract.

*By the Court.*—LUMPKIN, J. delivering the opinion.

It shall be my aim to *popularize* this opinion as much as possible. For while I am not enthusiast enough to believe that the time will ever come when every man will be his own lawyer, still I feel it to be a duty to accommodate our decisions, so far as we can, to the comprehension of those who are not lawyers by profession. The Legislature has seen fit to require the Reports to be distributed to all the Counties in the State. All men here are, by birth-right, hereditary law-makers, and judges upon the reputation and lives, as well as arbiters of the property of their fellow citizens, and that in the last resort. Every man is presumed to know the law. He is bound to do so at his peril. While ignorance of the fact excuses in civil as well as criminal conduct, ignorance of the law does not. It is right, therefore, that every man should read and understand the decisions of the Courts, and to enable him to do this, they should be divested, as far as practicable, of all technicality and intricacy.

Science, so long locked up in cloisters and colleges, has been brought, through the medium of popular tracts and lectures, to the hearth and home even of the cottager, and has thus been made eminently useful to the ordinary business of life. Shall botany, chemistry and philosophy in all its branches, be thus *republicanized*, and the law alone, in this age of inquiry and progress, remain a secret system, which the initiated only can pry into? The Americans, above all others, are a plain, practical people, and they will have justice dispensed to them in a plain and intelligible manner.

Moreover, all factitious distinctions in society, created by professions or any thing else, should be discouraged; and among the benefits resulting from the practice suggested, would be the removal, to a good degree, of those prejudices which now exist in

the bosoms, even of enlightened men, against this noble science, the mother of peace, the handmaid of morality.    The sooner she is emancipated from the cumbersome appendages of the scholastic and feudal ages, the better.

With these preliminary observations we will proceed, after a brief summary of the facts, to the questions presented in the record.

This bill was filed by the complainants against the defendants, to enforce certain articles of agreement entered into by John Neves and Catherine Jewell, anterior to their marriage, to this effect : " That all the property, both real and personal, which was or might thereafter become the right of the said John and Catherine, should remain in common between them, the said husband and wife, during their natural lives; and should the said Catherine become the longest liver, the property to continue hers so long as she might live, and at her death to be divided between the heirs of the said Catherine and the heirs of the said John, share and share alike, agreeably to the distribution laws of the State; and, on the other hand, should the said John become the longest liver, the property to remain in the manner and form as above."

The marriage, it appears by the bill, was consummated.    John Neves died in 1828, some eighteen years thereafter, having previously made and published his will, by which he devised and bequeathed one-half of his estate to one George Rowell.

Catherine, the widow, instituted proceedings on the Chancery side of the Superior Court of Baldwin County, against Richard Rowell, the executor of John Neves' will, wherein she insisted that, under and by virtue of the marriage articles heretofore set forth, she was entitled to the whole property during her life, after paying the debts of the estate, and the expenses of administration; and that said settlement between her and her deceased husband could not be affected or controlled by his testament.    The following final decree was rendered by the Special Jury in the premises : " We find for the complainant a life estate in the property, agreeably to the provisions of the marriage contract, *leaving all other persons to contest their rights at her* (Mrs. Neves') *death.*"

Under this decree Catherine Neves took possession of the property, real and personal, and remained in possession of the same until her intermarriage with one William F. Scott, in 1835, and

Scott, after the marriage, exercised control thereof. Catherine died in 1844, without ever having had issue. Scott has since died, and this bill is filed by Shimei Merritt and others, who claim to be the first cousins and *heirs at law* of the said Catherine, and as such entitled to recover the one-half of the whole estate which came to the hands of Scott upon his intermarriage with the widow of John Neves.

Are the complainants, *as heirs at law* of Catherine Scott, entitled to the interposition of a Court of Equity, to compel the performance of the marriage articles in their behalf, entered into between John Neves and Catherine Jewell?

We hold the following propositions to be well settled, namely:

[1.] *First.* That marriage articles like these will be specifically executed upon the application of any person within the scope of the consideration of the marriage, or claiming under such person.

But, *secondly*, that in no case whatever will Courts of Equity interpose in favor of *mere* volunteers, whether it be upon a voluntary contract, or a covenant, or a settlement, however meritorious may be the consideration; and although they stand even in the relation of a wife or a child.

And *thirdly*, that where a bill is brought by persons who are within the scope of the marriage consideration, or claiming under them, there Courts of Equity will decree a specific execution throughout, as well in favor of mere volunteers as the plaintiffs in the suit, so that indirectly mere volunteers may obtain the full benefit of the articles in cases where they could not directly insist upon such rights. *Atherley on Marr. Sett. ch.* 5, *p.* 131 *to* 145. *Story's Eq. Jur.* §§433, 706 *a*, 793 *a*, 986, 987, 1040.

[2.] Who, then, are within the reach and influence of this consideration of the marriage? In *Morgan Jenkins* and *Dame Margaret Kemishe*, (reported by Sir *Thomas Hardres, p.* 395,) Lord *Hale* remarked, that "the consideration of marriage and of the marriage portion, will run to all the estates raised by the settlement." But this dictum has not been followed, either in England or in this country; but, on the contrary, its authority has been pretty uniformly questioned or denied. Repudiating, then, what is reported to have been said by the Chief Baron in *Jenkins and Kemishe*, I answer, in the language of Lord *Macclesfield*, in *Osgoode vs. Strode*, (2 *P. Wms.* 255,) that "the marriage and marriage portion, support only the limitations to the husband and

wife and their issue, and such as claim under them, which are all that can be presumed to have been stipulated for by the wife or her friends." And that Equity will interpose at their instance only, *all others being volunteers;* and the reason why relief will be granted upon the application of those is, that the settler is under a natural and moral obligation to provide for them, whereas no such reason applies to distant heirs or relatives or mere strangers. And this is what the books mean when they say that the wife and offspring are within the scope of the provisions of the marriage articles, while others are not. Nor is this doctrine new in Equity jurisprudence. All uses and trusts to be raised by any covenant or agreement, must be founded on some meritorious or some valuable consideration, for Courts of Equity will not enforce a mere gratuitous gift, or a mere moral obligation or voluntary *executory* trust. It is otherwise, of course, where the trust has already vested. If A and B, for a valuable consideration as between themselves, covenant to do some act for the benefit of a third person, who is a mere stranger to the consideration, he cannot enforce the covenant against the two, although each one might enforce it against the other. *Sutton vs. Chetwynd,* 3 *Merriv.* 249.

And this acknowledged principle is precisely the point involved in this bill. It is an attempt by the complainants, who, in legal contemplation, are *third persons* to the contracting parties, although distantly related to one of them, to enforce the covenant between John Neves and Catherine Jewell, in their favor. Chancery will not lend its aid for this purpose. 1 *Fonbl. Eq. ch.* 6, §8. 2 *Ib. ch.* 2, §2, *and notes f, g, i.* 1 *Ves. Jr.* 53, 54. 2 *Keen. Rep.* 81, 97, 98. 8 *Sim. Rep.* 324.

Before dismissing this branch of the subject, I would observe, that the *case in Hardres* is not, after all, perhaps, in conflict with this position. For there, the settlement contained a provision for the *first* wife and her offspring, with remainder to the heirs of the body of the husband. And it was held, that it did extend to the issue of the *husband* by a *second wife.*

[3.] While it is not denied in the argument that, as a general rule, Equity will not interpose in behalf of those standing in the attitude of the complainants, yet it is urged, with much ingenuity, that inasmuch as the marriage articles make no provision for the offspring of the intended nuptials, (and in this respect are without a prototype in the books,) that, therefore, the next of kin of

the settler must be considered as occupying the place which issue usually do, and consequently coming within the scope of the marriage consideration. The reply to this is, children are within the reach of the marriage consideration, not because they stand next or nearest to the settler, but because the settler is under natural and moral obligation to provide for them ; and this reason does not apply to relations who are distantly connected, although, in point of fact, they may be nearest in blood to the settler.

The wife can enforce the articles, because founded upon marriage, which is a valuable consideration. The issue can claim execution of them, because they come within their influence, the settler being naturally and morally bound to make suitable provision for such. *None others can.* And so rigidly is this rule regarded, that specific performance will not be enforced, even in favor of *brothers and sisters* when claiming as volunteers. *Goodwyn vs. Goodwyn,* 1 *Ves.* 228. *Byas vs. Byas,* 2 *Ves.* 164. And if the conclusion be well warranted, that Equity will not enforce a specific performance, at the instance of a volunteer, although so near a relation as a brother or sister, and we maintain this position to be true, still less will it do so for a more remote relative. *Tudor vs. Anson,* 2 *Ves.* 582. *Strode vs. Russell,* 2. *Vern.* 621. *Marston vs. Senom,* 3 *Bro. C. C.* 170.

[4.] I have already stated, that Courts of Equity would enforce marriage agreements *in favor* of persons *at whose instance* they will lend no assistance. This happens where the articles contain limitations, both to those to whom Equity *will* lend its aid and to those to whom it will *not.* As for instance, if the covenant contain limitations, both to the issue of the marriage, and also to volunteers, for whom the settler is under no natural or moral obligation to provide, if a bill for a specific performance is brought by the issue, the Court will direct the articles to be executed *in toto ;* and consequently the settlement will contain limitations in favor of the volunteers. Whereas, if the bill had been brought by the volunteers, the Court would have dismissed it. The doctrine is, that where Courts execute articles at all, they always execute them *in toto* and not partially. *Atherley,* 125.

Now, the complainants insist, that the decree rendered in this case, at the instance of Catherine Neves against Richard Rowell, the executor of her deceased husband, was such a partial execution of the marriage articles, at the suit of the wife, as will inure

in their favor, although volunteers; and that, by reason of this proceeding, they are withdrawn from the operation of the rule which excludes volunteers from moving in their own behalf.

[5.] It is too late now to inquire, neither is this the proper occasion for such a discussion, whether or not such a decree as that quoted could have been rightfully rendered. If it could, then it is certainly not universally true, that Courts of Chancery, where they execute marriage articles at all, *always* execute them *in toto;* for it plainly appears, by the reading of this decree, that the articles were *partially* executed *only* in favor of Mrs. Neves. Moreover, it seems to have been penned with the express design of preventing the present parties from evoking it in their favor. For the Special Jury find and decree, " *that all other persons except Mrs. Neves, be left to contest their rights at her death.*" We cannot see, then, how the parties can be helped by this decree. It may have been irregular, still it remains unreversed, and to say the least of it, it does not place the complainants in any better condition than they occupied before. It was undoubtedly competent for the Court to have enforced the agreement in their favor. It expressly, however, refused to do so, and left them exactly where it found them. How, then, does this proceeding assist the plaintiffs?

Many cases may be found, where settlements have been made through the instrumentality of a party whose concurrence was necessary to its validity, and who procures a provision to be made in favor of one who would not come within the consideration of marriage. Such person is held not to be a mere volunteer, but as falling within the range of the consideration of the agreement. *Goring vs. Nash, Atk.* 186. *Doe ex dem. Hamerton vs. Whitton,* 2 *Wils.* 356. But as was very properly remarked by the learned Judge, in delivering his opinion in a case before him upon these same articles, but between different parties, in the *Sixth Circuit Court of the United States for the District of Georgia,* " These cases themselves establish that the marriage consideration alone will not support the limitation to a brother or a sister, and are, therefore, adverse to the claim of the present plaintiffs."

Let the judgment of the Court below be affirmed.