JOHN CARTLEDGE and WIFE, plaintiffs in error, vs. JOHN M. CUTLIFF and WILE, defendants in error.

[1.] Elcey Jones, a *feme sole*, possessed of an estate of land and negroes, in her own right, being about to marry, makes a marriage settlement, by which the whole estate is conveyed absolutely and irrevocably to a trustee, for the support and clothing of herself and family (in which is included Mary S., an infant daughter by a former marriage, so long as she continued single and a member of the family) and at the death of the said Elcey, the estate *to go to* certain named children by a former marriage. The marriage takes place, and the husband takes possession of the property embraced in the marriage settlement, and becomes by appointment the guardian of the infant Mary S., who was entitled to a considerable estate in her own right.

*Held*, That the provision in the marriage settlement for the clothing of Mary S., while she remained a member of her mother's family, and previous to her intermarriage, was good as an executed trust, and a Court of Equity will compel its execution in her favor.

[2.] That the guardian, having possession of such settled estate, was bound to provide the clothing of his ward out of that trust estate, instead of the ward's independent estate.

[3.] A guardian is entitled to at least two and a half per cent. commissions on all interest that accumulates in his hands, on balance in his hands due the ward, notwithstanding his failure to make any statement thereof in his annual returns.

[4.] A guardian who, in his answers to a bill filed against him for an account, appends a statement of the annual balances due by him to the ward, with a calculation of interest credits, or showing what he estimates the balance to be is not entitled to have such statement or calculation to go to the jury as evidence, *if for any purpose.*

[5.] An allegation in an answer, not in response to any charge in the bill, and unsupported by proof, is not to be considered by the jury as evidence.

In Equity, in Columbia Superior Court. Tried before Judge HOLT, September Term, 1859.

This case came before this Court, and was heard upon the following bill of exceptions:

JOHN M. CUTLIFF and WIFE, ⎫
              vs.      ⎬ Bill for discovery and se
JOHN CARTLEDGE and WIFE, ⎭       tlement.

Be it remembered, that at the September Term of said

Cartledge, guardian, vs. Cutliff et ux.

Court, on the eighth day of said month, and during said Term, in the year eighteen hundred and fifty-nine—the Honorable William W. Holt, presiding Judge of said Court—the above stated cause, being an equity proceeding, by John M. Cutliff and Mary S., his wife, former ward of the defendants, against John Cartledge and Elcey, his wife, as former guardians of the said Mary S., and for discovery, account and settlement of said guardianship, and there being a special jury regularly empanneled to try the issue between the parties, and the parties being each represented by counsel—

1st. The counsel for the complainants insisted, before the Court and jury, that the sums of money charged by defendants, (as by their annual returns, and appended to the bill,) against the complainant, Mary S., for clothing during her infancy, should not be allowed; because, that by an antenuptial contract between the defendants, which was also exhibited to the bill, and by which John W. Reid was constituted agent or trustee, the support and maintenance of the ward was provided for out of the trust estate of the said Elcey, which was settled to her use, excluding the marital rights of the defendant, John.

The defendant, John, by his answer, and before the Court and jury by his counsel, insisted and contended, that the trust estate of his wife never yielded any income or profit, but was inadequate to the support of the family charged upon it, and that he, defendant, had annually to advance the deficits of the estate from his private resources; but that during the time contemplated by said settlement, in which the said Mary S. was to have been a beneficiary under the same, she with the rest of the family had her full share of such articles as were prepared at home, and her board, lodging, &c.; the articles purchased and charged to her, by the guardian, being such as were not manufactured at home, and there being no funds of the trust estate to purchase them, and "that the defendant, John, being the guardian, and having the funds of the ward in hand, was liable for the support, maintenance,

&c., of the ward, and for the payment of the same out of the funds in his hands." And so counsel for defendants asked the Court to charge the jury; which charge, as asked, the Court refused to give, but in lieu thereof charged the jury: " That if they found a fund in the hands of the said John, chargeable with the support, &c., of the ward, the defendant was bound to have discharged those expenses from said trust, and not from the funds of the ward in his hands." To the refusal of the Court to give said charge as asked, and the said charge as given by the Court, counsel excepted.

2d. In the further progress of the trial of said issue, the defendants contended, " that if the trust estate of the defendant, Elcey, was liable for the clothing of the complainant, Mary S., that estate should be pursued in the hands of the trustee;" and so asked the Court to charge the jury; which said last named charge, as asked, the Court refused to give; and in lieu charged, "that if the jury found from the evidence, that there was a fund in the hands of the defendant, John, belonging to said trust estate, he was bound to pay for the clothing of the ward, Mary S., from the trust estate, and not from the funds of the ward, in his hands as guardian." And to which refusal to give said last named charge, as asked, and the giving of said charge as mentioned, in lieu thereof by the Court, counsel for defendants excepted.

3d. In the further progress of the trial of said issue, before the Court and jury, counsel for the defendants contended and insisted, "that the defendant, John, was entitled to a commission of not exceeding ten per cent. on all interest made on the funds of the ward, in his hands as guardian, and that it was not absolutely necessary that he should have returned in his annual returns, the amount of interest for each year; and that under the circumstances, the jury might allow commissions on interest, not exceeding ten per cent.," and asked the Court so to charge; which said last charge, as asked, the Court refused to give, and in lieu thereof charged the jury, "that commissions on interest, made by a guardian, on funds

loaned out, not exceeding ten per cent., nor less than two and a half per cent., might be allowed to guardians, and of which statements were made in their annual returns to the Court of Ordinary; but not in such a case as the one then at issue, where there had been no statement of the same in the returns." And to which last mentioned refusal to give the charge as asked, and to the charge as given in lieu thereof, by the Court to the jury, the counsel for defendants excepted.

4th. And in the further progress of the trial, the counsel contended, that the defendants being called on for an account and showing of their actings and doings, with a discovery as to the same, as guardians for the said Mary S., "that the original and amended answers, with the exhibits to them annexed, were responsive to the bill, and as such were proper evidence to be submitted to the jury; one of said exhibits containing a recapitulated statement of the interest made on funds of the ward; and the amended answer setting forth the loan by the guardian, of all funds which came to his hands, of the ward, and the crediting her with interest on the same." Which said last named charge as asked, the Court refused to give to the jury, and in lieu thereof charged the jury, "that the facts set forth in said amended answer, and in said exhibit to the original answer, were not evidence to be considered by the jury, further than the same appeared by the returns to the Court of Ordinary, and were mere allegations by defendants, which were required to be sustained by proof." And to which refusal to give said last named charge, as asked, and the giving of the charge in lieu thereof, by the Court to the jury, counsel for the defendants excepted.

J. C. & C. Snead; and Millers & Jackson, for plaintiffs in error.

R. Toombs; and Wm. M. Reese, *contra.*

*By the Court.*—LYON J. delivering the opinion.

John Cartledge and his wife Elcey, previous to their intermarriage in 1836, executed an antenuptial settlement, in which, after enumerating the wife's property, intended thereby to be settled and secured, and constituting John W. Reid, trustee and agent of the said Elcey, is to be found the following provisions, "in whom (the trustee and agent) it is intended that all of the above property, its interest and value, shall absolutely vest in law, *irrevocably*, to be by him used for the furtherance of its value, *reserving* to herself, family and other family, as he added to hers, including Rebecca Cartledge and Jane Cartledge, when not boarded out, and their clothing while in single state, a competent and decent support during her the said Elcey Jones's natural life; at her death the above property, its increase and value shall be divided equally between her children by a former marriage, to-wit: James Pace, Susan Avery, and Lavinia Pace." At the time of the execution of this settlement, Mary S., a daughter by a former marriage with one William Jones, and one of present complainants, was an unmarried infant, and member of the family of the said Elcey, and within that provision of her mother's marriage settlement, which relates to the clothing and support of her family while she remained single, out of the property embraced within the marriage settlement; she also possessed an independent estate which she derived from her father William Jones's will.

After the marriage of plaintiff in error, John Cartledge became the guardian of Mary S., and so continued up to her intermarriage with John M. Cutliff, and, as guardian during the time, managed and controlled the property that belonged to her, and made annual returns of the receipts and disbursements by him, showing the balance he admitted in his hands at each return, but made no statement of the interest accumulated on such balance, or how the funds in his hands were employed. Amongst other articles of charges against

his ward, returned and allowed by the Court of Ordinary to his credit as guardian, were different articles of wearing apparel, purchased for Mary S. his ward, while she was a *feme sole*, that amounted in the whole to some six or seven hundred dollars. This bill was filed by John M. Cutliff and his wife, Mary S., against the plaintiffs in error, for an account, as former guardian of the complainant, Mary S., and in the bill they charge in substance, that all the charges made by Cartledge, as guardian, against the said Mary S., while his ward, for wearing apparel, were improper charges, and ought not to be allowed him in this account, because she was entitled, under the marriage settlement between him and her mother, to have her clothing out of the separate property of her mother, embraced in the marriage settlement, all of which was in his hands, and had been from its execution; and that it was the duty of the said Cartledge, as her guardian, to see to it, that she got the benefit of that provision in her favor, and, having supplied the clothing, he had no right to reimburse himself out of her independent property, but to look alone to that estate in his hands which was so charged for her benefit.

To this charge, the plaintiffs in error, after admitting the marriage, the marriage settlement, the guardianship, and charges for clothing, &c., respond, denying that complainants or either of them had, or ever could take, any interest or rights in or through the same, (the marriage settlement,) and they insist that if any of the provisions of said contract have been violated by said John, (which is denied,) it is not for the complainants to call him to account therefor, but if liable to any person or persons, it would be to John W. Reid, trustee for his wife, and to the remaindermen.

Defendants further answering, say, that the trust estate yielded no income for the payment of these charges, but that it was an expense to the defendant, John. Here the parties were at an issue. The case was submitted upon the bill and answer, to which was appended a copy of the re-

turns made to the Court of Ordinary of Columbia county, by plaintiff in error, as guardian for complainant, Mary S.

The plaintiffs in error, by their counsel, requested the Court to charge the jury:

1st. "That the defendant, John, being the guardian, and having the funds of the ward in hand, was liable for the support, maintenance, &c. of the ward, and for the payment of the same out of the funds in his hands."

2d. "That if the trust estate of the defendant, Elcey, was liable for the clothing of the complainant, Mary S., that estate should be pursued in the hands of the trustee."

We do not know that we exactly comprehend what was meant by plaintiffs in error, in the first request, but under the pleadings, and as the question was argued before us, we understand the object to have been to deny the right of complainant, Mary S., to her clothing out of the separate estate of her mother under the marriage settlement, although that estate was in her guardian's hands at the time, and although it was expressly provided in the marriage settlement, that she should have her clothing from this estate; on the grounds taken in the answer:

1st. That the said Mary S. being a volunteer under that marriage settlement, and not within the influence of the marriage consideration, could not ask for an enforcement of any provision contained in it for her benefit.

2d. Because the trust estate yielded no income or profits to cover this charge.

This understanding of the first request, certainly covers he whole issue on that point.

The Court refused the request, and charged, "that if they found a fund in the hands of the said John, chargeable with the support, &c. of the ward, the defendant was bound to have discharged these expenses from said trust, and from the funds of the ward in his hands."

Was there any error in the refusals of the Court to charge

as requested, or in the charge as made by the Court to the jury, under the circumstances of this case then in issue?

We think that it is true that the complainant, Mary S., although a child of the settler, Elcey, by a former marriage, was not within the consideration or influence of the marriage between the plaintiffs in error, and whatever provision was made in that marriage settlement for her, she takes as a *volunteer*, for, it is well settled, that the only persons within the scope or influence of the marriage consideration, are the wife, and the issue of the marriage.

As a volunteer, will this Court enforce the provision created by that settlement, for her benefit against these parties who made the settlement? And that question depends entirely upon another question, that is, whether the trust or provision for the benefit of this complainant is executed or executory.

If the antenuptial conveyance in favor of Mary S., as one of the family, between the plaintiffs in error, was incomplete in its terms, and was, by reason thereof, inadequate to vest the rights and provisions therein intended to be vested and secured to the different persons named, or in other words, required or contemplated some other act to be done as a strict settlement, or new conveyance to carry out, and complete the expressed intentions of the parties making the same, and was, by reason thereof, executory, then it is settled law, that a Court of Equity will not, on the application of one like complainant, who is a volunteer, and not within the influence of the marriage consideration, lend its aid to enforce a performance of such intention in her favor.

On the other hand, if the trust created by this marriage contract for the benefit of Mary S., the complainant, is an executed one; that is, if the right is fully and completely vested in her by the instrument itself, and nothing more is, or was necessary to be done to secure the same, or was contemplated by the parties, at the execution of the same, to be done, in order to secure this benefit to her, then a Court of

Equity will compel its execution, for it is a right that is good at law. This principle is too well settled to admit of a doubt; there is scarcely any conflict of authorities on the subject, if any at all.

The case of *Merritt vs. Scott, in 6th Ga. Rep.,* 563, read and relied on by counsel for plaintiffs in error, is not in conflict. There the instrument before the Court was by the parties to the same called "*marriage articles*," and so they were treated by the Court. The question whether the limitations were executory or executed, was not made or considered by the Court, and all the authorities referred to by the Court in support of that decision, were in reference to either marriage articles, which from their very nature, contemplate a subsequent settlement to carry out the intentions they express, or executory trusts.

The same instrument was before the Supreme Court of the United States, in 9 *How.* 196, and there the Court said, that although the parties had styled the paper "marriage articles," yet, as they had by its terms, disposed of the whole estate, and nothing was left to be done to carry that intention into effect, the limitations were good as executed trusts, and the Court would compel an execution, notwithstanding the parties who sought to enforce the same were volunteers.

Here is the distinction; when parties, in contemplation of marriage, express an intention by marriage articles, or otherwise, to make a settlement, but do not in fact execute a legal settlement, a Court of Equity will compel a settlement, according to the expressed intention, in favor of those who are within the consideration that influenced that intention, such as the wife or issue of the marriage, but will not do so, at the instance of those who are mere volunteers, or who do not stand in that relation to the marriage consideration, for, as to such parties, the expressed intention in their favor is *voluntary*, for the performance of which the settler is under no moral or legal obligation, hence the Court will not compel a performance; but when an actual legal settlement has

been made, and the rights of the parties vested, and, as in this case, there is nothing for the Courts to do but to compel an execution, this they will do.

With this understanding of what the law is on this sub-ject, let us look to the instrument, under which the complain-ant, Mary S., claims this provision, and we find on an exam-ination, that it is a strict marriage settlement; the whole legal estate is conveyed to a trustee absolutely and irrevoca-bly, with such trusts engrafted on it, as cover the entire es-tate; in trust during the life of the intended wife, and for the support and clothing of herself and her family, including the complainant, so long as they remained single and mem-bers of her family, and at her death, the whole property to be equally divided between her children, James Pace, Susan Avery, and Lavinia Pace, and their children. This disposi-tion of the entire estate was as complete, and the settlement as perfect, as a Court of Equity could make it, taking the legal title from where it was before, and carrying it where the parties intended to, and did carry it by that deed. Then the trusts were executed and binding on the parties to it.

And why should they not be? At the time of this settle-ment, the property belonged to the plaintiff in error, Elcey, in her own right. She had the power to do with it as she pleased; to give a part, or the whole to whom she pleased; and having charged this property with this provision abso-lutely, without reserving any power of revocation, for the benefit of complainant, Mary S., how can she or her husband revoke or cancel that conveyance, when it is not charged to have been obtained by undue influence or fraud? If this provision is not good, and cannot be enforced, neither can the limitation over in favor of the remaindermen, for they all stand on the same footing. The Paces are children by one marriage; the complainant, Mary S., by a second. The one is not more meritorious than the other, the provision for the one is as perfect as the other, though of a different char-acter. Should we refuse to compel an execution of the pro-

vision in this settlement for the complainant, Mary S., the effect of our decision would be to defeat the whole purpose of this settlement, except the provision for the support of the wife during life; and before we did this, the case would have to be a very plain one. But viewing this conveyance as an actual legal settlement, and it is so, beyond all question, its limitations and provisions are good against the settlers, (*Ath. on Mar. Sett*, 144,) and they have no means of annulling it. *Ib.* 183–4, and cases cited.

But it is objected further, that the separate property of the mother, out of which this provision was to come, did not yield a sufficient income for that purpose; to this we answer, that this fact does not appear to be so. The answer of defendants in this particular not being in response to any charge in the bill, and not supported by any proof, the defendants were not entitled to the benefit of that objection.

Speaking for myself, however, I can say, that I see nothing in the marriage settlement, that limits the right of clothing and support out of this property of Mrs. Cartledge and her family, to the income or profits derived from its use. The remaindermen are not more the objects of this *settlement*, than are the wife and her family. They stand on no better footing; are only to take what is left after the property has subserved these objects for which it was first appropriated.

It follows from this view of the marriage settlement, that the complainant, Mary S. had a right to have her clothing out of this separate property of her mother, and having this right, it was the duty of the plaintiff in error, John, as her guardian, to secure to her the benefit of that right, and having done so, he cannot reimburse himself for such expenditure out of the funds in his hands belonging to the complainant, but must look alone to the separate estate.

Nor is it necessary for the complainant to follow that trust estate in the hands of the appointed trustee, for it is not there, nor has ever been. Had the property been in his hands while these charges were being incurred, and he had

refused to pay them, then it would have been the duty of the plaintiff in error, John, as the guardian of complainant, to have compelled him to do so.

The charge of the Court, that commissions on interest made by a guardian on funds loaned out, not exceeding ten per cent., nor less than two and a half per cent., might be allowed to guardians, and of which statements were made in their annual returns to the Court of Ordinary, but not in such a case as the one then in issue, when there had been no statement of the same in the returns, "excluded the guardian from all commissions on the interest account, and was in conflict with the construction put by this Court on 11th section of the Act of February 29, 1764, in *Royston vs. Royston*, decided at Macon, June Term, 1859; it being the. opinion of this Court, that the guardian is entitled to a commission of at least two and a half per cent. on all sums of interest, with which he is chargeable, whether any statement thereof has been made in his returns or not. That charge was therefore erroneous, but as two and a half per cent. for paying out this interest, was all that the plaintiff in error was entitled to, and all that he was deprived of by this charge, and as. $13,000 covers the amount of interest estimated by the jury against him in their verdict, as was conceded by counsel for both parties in the argument before us, the complainants must remit from the amount of the finding, two and a half per cent. on said amount of $13,000, which is $325, and thus reduce the verdict to that extent, or a new trial must be granted on this ground; but if complainants remit this amount of $325 from the verdict and decree as rendered in this cause, then the judgment of the Court below for the balance of said verdict must stand affirmed.

Counsel for plaintiffs in error, further requested the Court to charge, " that the original and amended answers, with the exhibits to them, were responsive to the bill, and, as such, were proper evidences to be submitted to the jury, one of

the exhibits containing a recapitulated statement of the interest made on the funds of the ward, and the amended answer setting forth the loan by the guardian of all funds which came to his hands, of the ward's, and the crediting her with interest on the same;" the Court refused so to charge, but did charge "that the facts set forth in the amended answer, and in said exhibit to the original answer, were not evidence to be considered by the jury, further than the same appeared by the returns to the Court of Ordinary; and were mere allegations by defendants which were required to be sustained by proof."

Upon a careful examination of the original and amended answers, we find that the only effect of this refusal and charge as made, was to exclude from the jury as evidence, the allegation in the amended answer, that "all sums of money received by him for, and on account of the said Mary S., as her guardian, were loaned out by defendant from time to time, and the interest received thereon accounted for in his return to the Court of Ordinary." This allegation was not in response to any allegation in the bill, and was supported by no proof beyond the returns, and in that case the jury were directed by the Court to consider the allegations as evidence. Another thing excluded from the jury as evidence by this direction, was a statement of the annual balances, as shown by defendants, together with the amount of interest due on each balance as calculated by defendant to the bill. In other words, it was a calculation prepared by defendant or his counsel, of what he admitted was the balance due by him to complainants, or rather what the complainants were due to him, for I believe, by this calculation, he brings them in debt to him.

To ask that such a statement or calculation should go to the jury at all, even as pleading, was asking a great deal, more, indeed, than I think he was entitled to; for it was calculated to, and might have misled the jury; but to ask that the jury should take that ex parte calculation as evidence

Cartledge, guardian, vs. Cutliff et ux.

was too much.   There was no error in refusing the request, or in the charge as made.

So the judgment must be affirmed, provided the complainants remit from the amount of the decree the sum of $325 for commissions on the $13,000 interest; if the complainants fail or refuse to do this, then a new trial must be granted on that ground.

Judgment affirmed, on conditions.