S95A0226, S95A0228. SIEG v. SIEG et al.; and vice versa.
(455 SE2d 830)

HUNSTEIN, Justice.

Defendant Lynne Sieg appeals in Case No. S95A0226 from the grant of an interlocutory injunction to plaintiffs, Ms. Robert Sieg, Sr. and Deborah Sieg Bowen. Plaintiffs appeal in Case No. S95A0228 from the denial of their motion in the trial court to dismiss defendant Lynne Sieg's appeal.

Defendant, who is the widow of Robert Sieg, Jr., was appointed the administrator of his estate in 1990 and distributed the assets thereof to herself on the basis that she was the sole heir at law. Four years after she was discharged as administrator, plaintiffs, who are the decedent's mother and sister, brought suit alleging that defendant had improperly claimed the estate's assets because she had waived her rights as an heir at law in the estate in a prenuptial agreement, and moved for a temporary restraining order to bar defendant from depleting the assets of the estate, which they claimed should have come to them. After a hearing the trial court entered an order that "temporarily restrained" defendant from disposing of the estate assets. The trial court rejected defendant's contention that she was not barred from inheriting by the prenuptial agreement and held that plaintiffs had standing to enforce the waiver in that agreement.

1. Construing the trial court's order "to serve the best interests of justice, judging the order by its function rather than by its name, [cit.]," Howell Mill/Collier Assoc. v. Pennypacker's, 194 Ga. App. 169 (1) (390 SE2d 257) (1990), we agree with defendant that the trial court's restraining order, albeit referencing the "temporary" nature of the restraint, was in effect an interlocutory injunction. Hence, defendant's direct appeal from that order was proper. OCGA § 5-6-34 (a) (4). Accordingly, even assuming, arguendo, that a trial court has the authority under OCGA § 5-6-48 to dismiss an appeal, but see Castleberry's Food Co. v. Smith, 205 Ga. App. 859 (1) (424 SE2d 33) (1992), no error is presented in Case No. S95A0228 by the court's denial of plaintiffs' motion to dismiss.

2. In Case No. S95A0226, defendant contends the trial court erred by entering an interlocutory injunction because plaintiffs' complaint shows on its face that they had no standing to maintain their action. Relying on Merritt v. Scott, 6 Ga. 563 (1849), defendant contends the prenuptial agreement (which plaintiffs attached to their

complaint) constituted only "marriage articles," see OCGA § 19-3-62 (a), to which plaintiffs were not parties and thus because plaintiffs are merely collateral relatives, see OCGA § 53-4-2 (1), they are not entitled to relief based on the agreement. OCGA § 19-3-66. We disagree.

OCGA § 19-3-62 provides in pertinent part:

> (a) . . . the term "marriage articles" means any antenuptial agreement between the parties to a marriage contemplating a future settlement upon one spouse. . . .
>
> (b) An agreement perfect in itself which needs no further conveyance to effect its purposes is an executed contract and does not come under the definition of marriage articles.

"Marriage articles" has been defined as "[a]rticles of agreement between parties, contemplating marriage, intended as preliminary to a formal marriage settlement, to be drawn after marriage." Black's Law Dictionary (Rev. 4th ed.).

This Court clarified the distinction between "marriage articles" enforceable only by the parties thereto and their offspring and "marriage contracts" enforceable by parties, such as plaintiffs, in *Cartledge v. Cutliff*, 29 Ga. 758 (1859).

> [W]hen parties, in contemplation of marriage, express an intention by marriage articles . . . to make a settlement, but do not in fact execute a legal settlement, a Court of Equity will compel a settlement, according to the expressed intention, in favor of those who are within the consideration that influenced that intention, such as the wife or issue of the marriage, but will not do so, at the instance of those who are mere volunteers, or who do not stand in that relation to the marriage consideration, for, as to such parties, the expressed intention in their favor is *voluntary*, for the performance of which the settler is under no moral or legal obligation, hence the Court will not compel a performance; but when an actual legal settlement has been made, and the rights of the parties vested, and . . . there is nothing for the Courts to do but to compel an execution, this they will do.

Id. at 766-767.[1] Accord *Reynolds v. Reynolds*, 217 Ga. 234, 252 (4)

---

[1] *Cartledge*, supra, also points out that the very same prenuptial agreement in *Merritt*, supra (which resolved litigation by the wife's relatives) was before the United States Supreme Court in litigation brought by the husband's relatives, and that the Supreme Court looked beyond the nomenclature of the agreement to find that it was a marriage settlement fully enforceable by the husband's collateral relatives (i.e., his brother and nephew). *Neves v. Scott*, 50 U. S. 196 (9 How. 196) (1850).

(123 SE2d 115) (1961).

The prenuptial agreement in this case provided in pertinent part that in consideration of the parties' marriage, defendant agreed

> that she will neither during the lifetime of [the decedent] nor after his death take, claim, demand, or receive, and does hereby waive and release all rights, claims, titles, and interests, actual, inchoate, or contingent, in law and equity which she might by reason of her marriage to [the decedent] acquire in his property or estate, including but not limited to: [dower rights or statutory substitute therefor or any right to take against the decedent's will].
>
> Both parties covenant that they shall willingly, at the request of either party, or his or her successors or assigns, execute, deliver, and properly acknowledge whatever additional instruments may be required to carry out the intention of this Agreement . . . .

It is apparent from this language that the parties understood the agreement to constitute a final and complete settlement, not contemplating any future act. This conclusion is reinforced by the fact that if the document were construed to constitute marriage articles, defendant's agreement not to assert any claim on the decedent's estate would be rendered meaningless, since under OCGA § 19-3-62 (a) marriage articles are enforceable only "during the life of the other spouse." See *Wilcox v. Wilcox*, 225 Ga. 472 (1) (169 SE2d 819) (1969). Hence, "giv[ing] effect to marriage agreements according to the understanding of the parties," *Neves v. Scott*, 50 U. S. 196, 212 (9 How. 196) (1850), we find that the prenuptial agreement in this case constituted an "actual legal settlement [under which] the rights of the parties vested," id.,[2] and thus comes under the ambit of OCGA § 19-3-62 (b) rather than OCGA § 19-3-62 (a). See *Carr v. Kupfer*, 250 Ga. 106 (296 SE2d 560) (1982). Therefore, the trial court correctly concluded that plaintiffs have standing to enforce the agreement. OCGA § 19-3-66.

*Judgment affirmed. All the Justices concur.*

---

[2] Our holding goes solely to the trial court's ruling as to plaintiffs' standing to enforce the agreement and neither addresses nor intimates any opinion as to the viability of defendant's remaining defenses, e.g., that the prenuptial agreement lacked consideration, was the result of a mutual mistake of fact and law, was the result of duress, etc.

Decided April 10, 1995 —
Reconsideration denied May 5, 1995.

*Miller, Simpson & Tatum, John M. Tatum, Sandra J. Mathis,* for appellant.

*Adams & Ellis, Ronald C. Berry, Tracy O'Connell,* for appellees.