WILLIAM CAULK, ADMINISTRATOR *cum testamento annexo* OF DANIEL W. HART, *et al.* vs. SAMUEL W. FOX AND WIFE.

1. While, according to the strict rule of the common law, a freehold estate cannot be created to commence *in futuro,* and an ante-nuptial settlement by the husband of real property upon the wife, in consideration of marriage, under which a freehold estate is to vest in the wife upon the mar-

Caulk vs. Fox and Wife—Statement of Case.

riage, cannot operate as a feoffment at common law, yet the instrument will operate as a covenant to stand seized to the use of the person named, and a Court of Equity will secure .the wife in the enjoyment of such estate as passes under the deed.

2. While equity will construe a marriage settlement differently from its terms, and vary their strict legal signification in many cases in favor of the issue, upon the presumed intention of the parties to provide for the issue, the same rule is not applicable where the contest is between collaterals, devisees under the will of the husband on the one side, and the wife on the other.

3. In such a contest, if the words used in the preamble and premises of the deed operate to pass a fee simple, and the *habendum* of the deed is inconsistent with the grant in the premises, inconsistent with itself, and uncertain, and such a construction carries out what in the opinion of the court was the real intention of the parties under existing circumstances, the preamble and premises will control, and an estate in fee simple passes.

This is an appeal from a decree rendered by the Judge of the Fourth Judicial Circuit in Duval county.

Daniel W. Hart, the son of Isaiah D. Hart, deceased, being entitled to some property under the provisions of the will of his father, and being about to contract marriage with Johanna F. DeWall, executed with her an ante-nuptial settlement in the words following :

WHEREAS, A marriage is contemplated, and shortly to be had and solemnized between Daniel W. Hart and Johanna F. DeWall, both of the city of Jacksonville, and county of Duval, and State of Florida, being.

*Whereas*, The said Daniel W. Hart, being willing to make a liberal, certain and sure provision for her support and maintenance, and it having been agreed and understood by and between them, in case of any unforeseen casualty, that whatsoever property or estate, whether real or personal, which the said Daniel W. Hart now hath, or may hereafter acquire or become entitled to, by distribution, gift, or otherwise, from his father's estate, the one-half of which should be made over to the said Johanna F. DeWall, his intended wife, and to her heirs, and not to be subject to or liable for

his present or future debts or responsibilities in any manner whatsoever.

*Now, therefore, this indenture witnesseth,* That from and immediately after such marriage being had and solemnized in accordance with law, the said Daniel W. Hart doth transfer and set over unto the said Johanna F., and to her heirs, the one-half of whatever property there may be coming to him, by distribution, gift, or otherwise, from his father's estate, now in the hands of his executors. To have and to hold, all and singular, the said property, for the use, benefit and maintenance of all the said parties herein mentioned, forever; and in case there should be no heirs, then to the sole use, benefit and maintenance of the said Johanna F., and to and for no other use, intent or purpose whatever.

IN WITNESS WHEREOF, The said parties hereunto set their hands and seals this 20th day of May, A. D. 1862.

DANIEL W. HART,        [L. S.]

JOHANNA F. DEWALL. [L. S.]

Signed, sealed and delivered in presence of

    E. F. HAYNES,

    H. KOOPMAN.

The marriage subsequently took place.

The husband, Daniel W. Hart, died some time afterwards testate. There was no issue of the marriage. Johanna subsequently intermarried with Samuel W. Fox. This contest is between Johanna F. and her husband, on one side, with the executors of the will of Isaiah D. Hart, the administrator, with the will annexed of Daniel W. Hart, and the persons entitled to interests under said wills, on the other.

The only question raised by the pleadings is, what interest and estate Johanna is entitled to in the one-half of the property coming to Daniel W. Hart under the will of his father, she and her husband claiming that she is entitled to an estate in fee simple; the executors and administrator and parties having interests under the wills claiming that she has a life estate only.

The Chancellor determined that she had an estate in fee simple, and so decreed. From this decree the parties appellant appeal.

*Sanderson & L'Engle* for Appellants.

The point to be determined is, what estate Johanna F. Hart (*nee* Johanna F. DeWall,) took under the ante-nuptial indenture.

The appellees contend that she took a fee simple. The appellants that she took an estate for her life only.

To determine the question, it is necessary to consider :

First. The nature of the instrument under which she claims.

Second. The principles by which the instrument should be construed ; and, thirdly, what that construction should be.

1. The instrument is not a deed vesting a fee simple estate, because it was to operate *in futuro*, and a freehold cannot be created to take effect *in futuro*, but *in presenti* only. Suppose no marriage had taken place, would any estate have passed ? The answer to this question determines the nature of the instrument. 4 Cruise's Digest, 52. The instrument is an agreement in contemplation of marriage. Its effect is that of a covenant, to stand seized to uses. 4 Cruise's Digest, 116 ; 2 ib., 310–11. The recitals of the instrument show it to be a marriage settlement only, and not a deed of feoffment.

2. The rules by which this instrument should be construed are not those applicable to ordinary deeds of feoffment, greater latitude being extended to the construction of marriage settlements than to limitations of estate. The intention here governs and will control particular words or expressions. 2 P. Williams, 342 ; 4 Cruise's Digest, 274 ; ib., 323 ; Atherly on Marriage Settlements. Among the rules of construction, we submit these as applicable to the instrument under consideration :

All deeds shall be construed favorably, and as near the

apparent intention of the parties as possible, consistent with rules of law.

When the intention is clear, too minute a stress ought not to be laid on the strict and precise meaning of words. The construction ought to be on the entire deed, and not merely on any particular part of it. The rule that a deed is always construed most strongly against the grantor applies to a deed poll, but not to an indenture as in this case. 4 Cruise, 255–259. Where a deed first speaks in general words, and afterwards descends to special ones, if the special ones agree with the general ones, the deed shall be intended according to the special ones. 4 Cruise, 292.

3. Applying the foregoing propositions to the instrument under discussion, we find that Mrs. Johanna Hart did not take a fee simple, but an estate for life only; for, in executing marriage articles, and construing marriage settlements, courts consider that a provision for the issue of the marriage was a leading object. Atherly on Marriage Settlements, 93–94; 4 Cruise's Digest, 336–351–3. The word heirs, therefore, in the instrument before us, means issue of that marriage. The estate is conveyed to her for life, (no estate being under this construction limited to her), remainder to the issue of the marriage—reversion to grantor if there be no such issue. "Heirs" here is a word of purchase, operating to give the estate to the heirs (that is, issue,) originally, and as the persons in whom the estate is considered as commencing. It is not a word of limitation, operating to expand the estate in the ancestor (Johanna), so as to let the heirs described into its extent, and entitle them to take derivatively through or from her (Johanna), as the root of succession or person in whom the estate is considered as commencing. 4 Cruise, 293–4.

If this be not the force and effect of the word heirs—if it be not a word of purchase, but a word of limitation, the intention of the marriage settlement (or what the law in the absence of express words to the contrary presumes to be the

intention,) of making a provision for issue, might be entirely defeated by the wife's (should she survive her husband,) conveying away the estate, or (living the husband,) by his joining her in the conveyance. The word heirs is subject to explanation, and apart from its technical meaning is universally used as synonymous with children. 3 Strobhart's Eq. R., 72, and cases cited; 1 P. Williams, 232; 3 Richd. Eq., 156. The apparent fee simple estate conveyed in the premises of this instrument is qualified by the *habendum*, which says, in the first place, that the estate shall be held "for the use of all the parties mentioned." Who are the parties? Daniel Hart and Johanna DeWall. In a declaration of uses, a use may be declared in the *habendum* to a person (D. W. Hart), to whom no estate is granted in the premises. 4 Cruise, 298.

In the second place, the *habendum* says, "should there be no heirs," (that is, issue of the marriage), the estate shall be held "to the sole use and benefit of the said Johanna."

Although a devise to a person and his heirs gives him an estate in fee simple, yet, if the word heirs be qualified by any subsequent words, which show the intention of the testator to restrain it to the heirs of the body of the devisee, the devise will in that case create only an estate tail. 6 Cruise, 250–1, citing authorities; 7 Taunt., 85; Cro. Jac., 290; 9 East, 382; Cro. Jac., 427–695; 3 Bro. Parl. Ca., 154, cited in 6 Cruise, 251–5; Thurman's case, 1 Roll's Ab., 68; 8 Rep., 154; 1 Inst., 122. "No technical words are required to restrain the general import of the word heirs to the lineal descendants of the grantor; any words that show such an intention will be sufficient." 4 Cruise, 297; Cro. Eliz., 478; Plow., 53–541; 5 Mod., 266; 1 Ld. Raymond, 101. The word heirs in the instrument, being thus divested of its technical sense, and construed to mean issue of the marriage, there are no expressions left by which Johanna can claim more than a life estate. The words "to hold for the use of

the parties forever," in the *habendum*, do not create a fee simple. Bac. Abr. Title Estates in fee simple, B. 1. Neither, certainly, do the words which follow—" then to the sole use of the said Johanna, and for no othes use." 1 Washb. on Real Property, 617.

*Fleming & Daniel* for Appellees.

The writing operates as a deed of marriage settlement. It vested in the wife, Johanna, a fee simple and absolute title in the property on the celebration of the marriage. There can be no doubt as to the first conclusion. Will not a careful and critical examination lead to the second conclusion?

The words used are such as are required to create a fee simple, to-wit: "heirs." 2 Greenleaf's Cruise on Real Property, 656.

The words used to create a life estate, to-wit: "To hold to the said A. B. and his assigns for and during the term of his natural life," or words of similar import, are no where used. The words used create a fee simple estate. Do they admit of a different legal construction? Let us consider the instrument as marriage articles. What is the rule of construction? "In the case of marriage articles, the construction is founded on the *apparent* intent of the parties, however untechnically expressed, and is therefore more liberal than in the case of deeds." 2 Greenleaf's Cruise on Real Property, 679. What is the apparent intent as expressed in the preamble? That a marriage being contemplated between Daniel W. Hart and Johanna F. DeWaal, the said Hart was willing to make a liberal, certain, and sure provision for her support and maintenance, and that he would do this by making over to his intended wife, Johanna, and to her heirs, the one-half of what he was entitled to receive from his father's estate, whether real or personal. Read the preamble to the deed; and in the body of the instrument it is provided, that from and immediately after

such marriage shall be solemnized, in accordance with law, the said Hart doth transfer and set over unto the said Johanna, and to her heirs, the one-half of the property that may be coming to him, &c.; and by the tenendum it is held to the benefit and maintenance of the said parties, in the said deed mentioned, forever. What parties? Not Daniel W. Hart; because the intention, as expressed in the preamble, was to make a provision for Johanna and her heirs not subject *to his debts.* That he could not do and provide for his maintenance out of the same fund, because in that case it would not be secure from his debts. By all the parties in the said deed mentioned, was meant Johanna and her heirs. "And in case there should be no heirs, then to the sole use, benefit, and maintenance of the said Jahanna." For how long? Her life? There is no such limitation. Therefore there is no limitation inconsistent with the grant to Johanna and her heirs, which had before passed the fee. In the whole instrument there is nothing that looks to a reversion to Hart and his heirs. Do the words contradict the apparent intent? We find no such contradiction.

But, as we have before said, the paper operates as a deed and not as an agreement. Therefore, the rule for construing deeds must govern its construction—one of which is, that subsequent words shall not defeat precedent ones, if by construction they may stand together; but when there are two claims in a deed, of which the latter is contradictory to the former, then the former shall stand. 2 Greenleaf's Cruise on Real Property, 591. Modern decisions have restricted this rule to a certain extent. *Ibid.,* note 2. But, notwithstanding the modification, it is still applied with its original force to clauses clearly repugnant. *Ibid.,* note 2. In grants, if words of restriction are added which are repugnant to the grant, the restrictive words are neglected. *Ibid.,* note 3. For example: A deed of a water course contained in the granting part the words, "to him and his heirs, executors and assigns forever;" and there was a covenant that the

grantor, his executors, administrators and assigns, shall enjoy the premises forever, or so long as he may want the use of the water for machinery, and no longer: Held, that the covenant was not repugnant to the grant, but if it was so, it should be rejected. 16 Barb., 150. Whatever is expressly granted, or covenanted, or promised, cannot be restrained or diminished by subsequent provisos, restrictions, &c.; but general or doubtful clauses precedent, may be distributed or explained by subsequent words and clauses not repugnant or contradictory to the express grant, covenant or proviso. 3 Pickering, 277. What is the grant to "Johanna and her heirs?" What does the word mean as used in this deed?

"The word heir, like all other legal terms, when unexplained and unconstrued by the context, must be interpreted according to its strict and technical import, in which sense it obviously designates the person or persons appointed by law to succeed to the real estate in question in case of intestacy." 2 Jar. on Wills, 2.

Now is there any expression in this deed to indicate that the legal heirs of Johanna are not meant? It may be contended that the words, "and in case there should be no heirs," indicate that the word "heirs" is used for and means "children." We reply, that the preamble to the deed much more clearly indicates that the word is used in its ordinary sense (and the language in the tenendum points to the same interpretation) in the grant; and if a limitation was sought to be made, it was inconsistent with the grant, and must be rejected. But we argue that the words, "in case there should be no heirs," were not intended for a limitation. If children are meant, the words are not repugnant but superfluous, and the result of the ignorance of the person who drew the deed, who, supposing the estate conveyed would be divided between the mother and the children, by this last cause sought to secure the property to the mother, if there were no children. If the word "heirs" means children, there is nothing in the deed to indicate that the intention was to

limit the property to the children of any particular marriage; and who shall say that Johanna may not yet have children?

But again: does the word "heirs," as used in this deed, mean children, and children of the then intended marriage? How will the grant operate? As a conveyance to Johanna and children of Daniel W. Hart? The word heirs, in its usual acceptance, is not used at all, consequently the fee is not conveyed to the children or to Johanna by the deed, but would have remained in Hart, even if he had had children by Johanna. 4 Kent, 5. Can any one suppose that such a disposition could have been intended by Hart?

As we have before shown, money is not only a good consideration, but the very highest consideration. This deed transfers half of the estate of the grantor to Johanna F. and her heirs, which clearly conveys the fee simple estate to Johanna. If a fee simple estate for a good consideration is created, there can be nothing to defeat it in the subsequent restrictions; the words "Johanna and her heirs" must be construed in their settled legal sense. The attempt to create a use, could not defeat the estate, for, supposing we admit that it was intended that the property should be, or its proceeds, used for his wife and their children, and then the words, "should there be no heirs," refer to the children of the intended marriage, it could not have been intended by Hart to create a trust in his intended wife for the use of his heirs generally, or for their maintenance or benefit. At the death of Hart, there being no children living, the estate was certainly freed from all restriction. The last clause is not repugnant to the words of conveyance, "her heirs," as it only gives her rights and privileges to which she was entitled under the deed without such clause.

WESTCOTT, J., delivered the opinion of the court.

The question in this case is, what estate and interest Johanna F. Fox is entitled to in the one-half of the prop-

erty coming to her former husband, Daniel W. Hart, from his father's estate.

To determine this question, we are to construe the instrument set forth in the statement of the case, as it is under this instrument that she claims. Upon the part of the appellants, it is insisted that the instrument cannot operate as a feoffment at common law to pass a freehold estate to the wife upon the happening of the future event of marriage, because a freehold estate could not thus be created to commence *in futuro*, and that the effect to be given to the instrument was that of articles of marriage settlement; that under this instrument, giving it that effect, " the estate is conveyed to the wife for life, (no estate being limited to her,) remainder to the issue of the marriage, reversion to the grantor if there be no issue; that the word heirs here is a word of purchase, operating to give the estate to the heirs (that is, issue,) originally, and as the persons in whom the estate is considered as commencing. It is not a word of limitation operating to expand the estate in the ancestor so as to let the heirs described into its extent, and entitle them to take derivatively through or from her (Johanna) as the root of succession or person in whom the estate is commencing."

The position of appellants just stated is inconsistent with another position which they take in reference to this instrument. They insist that the term " parties," in the *habendum* of the instrument, means the husband and wife, the persons who executed it. If this be so, and the estate thus limited in the *habendum* controls, and such an estate can be thus limited, then the same beneficial interest which passes under the deed to the wife would pass to the husband, and hence the wife could not have an absolute life estate in the whole property.

On the other hand, appellees contend that the instrument was effective as a formal disposition, (1 Sch. & Lef., 87,) that the estate which passed under the deed was an estate

in fee ; that upon the marriage, the legal title either vested in the wife under our statute, or if this result did not follow and the deed was ineffectual to pass the legal title to the wife, then the husband would be treated as a trustee during coverture, and upon the death of the husband, the wife surviving, a court of equity would make the deed effectual to pass such an estate to the wife. It was no doubt the purpose of the parties by this instrument to settle the property in accordance with an antecedent agreement, and not to reduce to writing the terms of such agreement. This is evident from the preamble or recital of the instrument. If it fails to have this effect, it will be the result, not of a want of intention that it should have this effect, but the result of the application of the rule of the common law that an estate of freehold must take effect presently, either in possession or remainder ; the estate under this deed not taking effect presently because it was to take effect only on the marriage, and it could not take effect in remainder as there was no precedent particular estate to support the remainder—no estate between the date of the conveyance and the marriage. This instrument purports to be an antenuptial settlement, and not articles of agreement embodying the terms of a settlement to be made after marriage. The rule as stated by Mr. Atherly is, " that it is only in cases where the parties themselves evidently considered the instrument in the light of articles, and intended a future act, that courts of equity will so consider it. Where they clearly intended it to operate as a final, complete settlement, it must always be looked upon *as such*." Atherly on Marriage, 123. If such an instrument can be made effective to pass a freehold estate upon the happening of the marriage, that is an end of this question, and we have only to determine what estate passes under the terms used, being controlled in the construction of those terms by the rules obtaining in a court of equity in like cases.

Such an instrument, viewed as a feoffment at common

law, could not be sustained; but such an instrument, having a marriage consideration, has been universally sustained as a covenant to stand seized, although, generally speaking, a settlement should not be made by covenant to stand seized. In such a case as this, where there is a consideration for raising a use, the instrument is construed as a covenant to stand seized to the use of the person specified, and the estate passes, not by feoffment as the deed says, but by virtue of the statute of uses and "*ut res magis valeat quam pereat*," and the estate which the party is entitled to is such estate as was intended, if consistent with the rules of law. 2 Wilson, 77; Shep. Touch., 83; 2 Ves., jr., 226; 1 John. Cases, 96; 20 John., 87; 22 Wend., 142; 32 Maine, 332; 3 N. H., 452; 15 N. H., 393; 4 Mass., 136; 7 Mass., 384; 22 Pick., 380; 4 Desau., 627; 2 Hill Chy., 3.

We have thus only to determine what estate was intended to pass under the terms used in this instrument, being controlled in our construction by the rules obtaining in a court of equity in like cases.

The preamble or recital of this instrument sets forth substantially that the husband had, anterior to its execution, agreed to make a liberal, certain and sure provision for the support and maintenance of his intended wife; that the property to be secured to his intended wife was not to be subject to or liable for his present or future debts in any manner; and an agreement and understanding between them that he was to "make over" to his *intended wife and her heirs* one-half of the property to which he was entitled then or might thereafter become entitled to from his father's estate. It is plain that the legal effect of the terms used here determine the estate agreed to be made over to be a fee simple, and that there is no expression of an intention to provide for the issue of the marriage. The only intention expressed, the only matter agreed upon, was to provide for the wife. The grant in the premises of an estate to the said *Johanna F. and her heirs*, is the grant of an estate of

inheritance, a fee simple.   This really is all that is perfectly clear in the instrument.

When we reach the *habendum*, a difficulty, a doubt arises. Construing it as appellants do, it is inconsistent with what precedes.   It has inconsistent provisions in itself.   The *habendum* is " to hold for the use, benefit and maintenance of all the said parties herein mentioned ;" and then follows a clause not securing a benefit or passing an estate to the heirs, but providing that in the event there are no heirs, then *habendum*, " to the sole use, benefit and maintenance of the said Johanna F., and to and for no other use, intent or purpose whatsoever."   Appellants insist that the word parties in the first clause of the *habendum* means Daniel W. Hart and Johanna F. DeWall.   They also insist that the word heirs in the next clause means issue of the marriage, and they insist that the estate which the wife takes under the deed is a life estate.

It is plain that the wife, under either of these clauses, took no life estate, giving the words the construction contended for.   In the one case, the husband would take an equally beneficial interest with the wife; and under the other, the wife would take no life estate in the whole property, except upon the happening of the contingency, the failure of issue.   Any beneficial interest in the subject matter of the grant remaining in the husband, is inconsistent with his expressed intention in the previous part of the deed, to the effect that the estate was to be limited to Johanna and her heirs, and that the property was not to be subject to his debts, either present or future.   On the other hand, giving the word heirs in the last clause of the *habendum* its strict legal signification, this clause would amount to a grant of an estate upon a condition which could not be known or determined until after the time during which the estate was to be enjoyed had expired, a grant of a life estate to a person upon condition that he has no heirs, when

you cannot determine whether he has any heirs until after his death, *nam* " *nemo est hæres viventis.*"

Something was said in argument in reference to giving those words in the *habendum* a construction which would limit the estate granted in the premises to certain uses, making the party Johanna the feoffee to such uses as are declared in the *habendum.* We do not think there was any such purpose.

The estate which the parties intended to pass under the deed was not a statute use. It was manifestly an estate at common law, and the words for the use, benefit and maintenance, &c., only served to show in how ample and beneficial a manner the feoffee was to take the estate granted. 1 Cruise, 429, 30, 31. The *habendum* should have commenced by a limitation of the estate to the grantee in such manner as was intended. This was, however, omitted, no doubt through want of knowledge, and what there is in it is nothing more than certain words to show the extent to which the estate previously granted was to be enjoyed by the grantee.

According to the construction contended for by appellants, the effect of the *habendum* here is to control the previous grant in the premises, and an estate " is conveyed to the wife for life, remainder to the issue of the marriage." It is impossible to construe this deed in such way that the issue of the marriage are to derive such an estate under it, for even if you were to insert the words " issue of the marriage," instead of the word " heirs," in the deed, no such estate would thereby pass to them under it.

Considering this last clause in the *habendum* with reference to the manifest intention of the parties to secure a permanent benefit to the wife, and giving the word heirs here the meaning contended for by appellants, the wife would not even have a life estate, except in the event there was no children or issue of the marriage. A life estate, upon the condition that it was to vest only in the event the wife had

no children by the intended husband, could never be called a "liberal, certain and sure provision" for her support. We have no idea that such a thing as this was intended. On the contrary, if we were permitted to enter the field of speculation, uncontrolled by the terms and legal effect of the deed, we would conclude, from the peculiar use of the word "parties" and the word "heirs," that it was the purpose of the parties to secure some benefit to the issue; what benefit, however, we would be unable to determine from anything before us, and we would also be of opinion that the purpose of the last clause of the *habendum* was to vest a fee simple, rather than a life estate, in the event there was no issue, the parties no doubt conceiving that the words there used passed such an estate.

It certainly would be unauthorized in a deed of this character to give an arbitrary construction to it, unauthorized by its terms, contrary to their legal effect, even when modified as suggested, and consistent with no apparent intention, in order to pass an estate in remainder to the issue of the marriage. This would not be the case, even if the instrument being construed was articles with similar provisions, instead of a final settlement and disposition.

Mr. Atherly remarks that, "so strongly do courts of equity lean in favor of a strict settlement," (that is, a settlement limiting a life estate to the parties, with remainder to the issue), "that if the articles even limit the estate to the husband or wife in fee, yet if it appears that the object must have been to make a provision for the children, the articles must be executed in strict settlement." Atherly on Marriage Settlements, 94–95. This is stating the rule strongly in favor of the issue. Can it be said in this case that "the object must have been to make a provision for the children?" We think not.

There is no doubt that courts of equity go very far in construing contracts of this character, whether executory or executed, whether in the shape of articles or final settle-

ments, to give them effect, so as to secure a benefit to the issue of the marriage, when such construction is consistent with the rules of law in reference to estates; but there is nothing in the adjudged cases which would justify us in creating an estate in remainder to the issue under this instrument, when, according to no fair construction, is there an estate in remainder or an estate tail passed to any one.

Whenever, according to their strict legal signification, the marriage articles gave the parents an estate tail, courts of equity in England, as a general rule, executed the articles in strict settlement; that is, whenever the articles limited the estate to the settler and *the heirs of his body*, instead of permitting a fee tail to pass, the estate was limited to him for life, with remainder to the first and other sons in fee tail. 1 P. Williams, 622; 1 Ves., 238; 2 Atk., 39; 2 Bro. P. C., 122; 1 Bro. C. C., 384; 3 Atk., 371.

The reason was, because if an estate tail passed, a recovery might be suffered and the estate aliened, thus depriving the issue of any benefit. As remarked by Lord Chancellor Hardwicke, that on a settlement for valuable consideration, to make the father tenant in tail would be nugatory, and the same as making him tenant in fee. Where, however, the husband's estate was settled on the wife and the heirs of her body, there an estate tail was limited to the wife, because she was prohibited by statute from discontinuing, aliening, or suffering any recovery of an estate tail derived through settlement by the husband.

While we do not propose to say what effect should be given to an instrument of this kind passing an estate tail, we remark that our statute provisions in reference to estates tail prevent the existence of many of the evils which these decisions remedy; but, however this may be, there is nothing in the case which brings it within these decisions. None of the decisions go to an extent which would justify us in giving this deed, which, according to everything that is definite or certain in it, was intended to pass a fee simple, a con-

struction which would vest an interest in remainder under it in the children.

The great difference between this case and the cases cited by appellants, is manifest. The case in 2 Piere Williams, 341, was an agreement by marriage articles that the testator would convey lands to the heirs of the body of his niece, Mary Bennett, by her said husband, and to *their heirs*. It appeared from the preamble that the purpose was to advance the issue of the marriage. The words, heirs of the body of the niece by her husband, were " construed children."

The instrument under consideration in the case in 3 Strob., 71, limited the estate to the joint heirs of the husband and wife. The subject matter was personal property, in conveyances of which the word heirs is not necessarily used.

The court held that the term joint heirs could not, under the circumstances of that case, there being children then in being, be held applicable to any other persons than the two children then in being, and that they took to the exclusion of the after-born children. Neither side denied that the intention of the deed was to vest a beneficial interest in the issue of the marriage. The only question was, whether the interest vested exclusively in the children then in being, or in all the children, including those *in esse*, as well as those to be begotten.

The case in 4 Desau. was an executory devise. The devise was, " I give and bequeath to my son, John Lee, certain lands and negroes (enumerated in the will), to him and his heirs ;" and in a subsequent clause, after other bequests to other children, the will directed, " If either of my children should die with " (meaning without, as was agreed by counsel), " an heir, then his share shall go to the rest of my children." It was not questioned that the word heirs here meant children. It was used in the same sentence as synonymous with it.

There are clear distinctions and differences between this case and all the cases which we have been able to examine.

These cases construe the word heirs, under certain circumstances, to mean children, and then pass such an estate as by this substituted meaning is limited to the children. In this case you can make the substitution, and no such result follows as to create a remainder in their favor. Besides, as we have before remarked, the latter portion of the *habendum* (although the terms used would pass only a life estate, and that only in case there was no issue), was no doubt, in fact actually intended to pass a fee to the wife in one-half of the property in the event there were no children, which is the fact presented by the record.

The issue of the marriage are no parties to this contest. The husband is dead, and there can be no such issue. While courts of equity will give a liberal construction to the terms employed in instruments of this character in favor of the issue, when it is possible that the issue may be benefitted upon the presumed intention of the parties (when there is room for a presumption to operate,) to provide for the issue, yet we cannot see why this rule, which is the creature of a court of equity, originating under a state of facts where a benefit may accrue to the issue, and to produce that result, should be extended to a case where the party who seeks to vary the terms of the instrument, and who is to derive a benefit, is one who claims through the husband, as against the wife, such an one being not a child, and the circumstances such that no issue of the marriage can ever derive a benefit. 1 Baldwin C. C. Rep., 489. The reason ceasing, the rule should cease. Upon what principle would a court of equity favor one rather than the other of these parties?

Estates limited to trustees to preserve contingent remainders from the power of the tenant of the preceding particular estate, were introduced, in order to secure in family settlements the provisions intended for the benefit of the issue of the marriage against being defeated by the parents, the

tenants for life, and courts of equity have always deemed the joining in a conveyance by such trustees to destroy the contingent uses or remainders a breach of trust. If, however, there was no issue of the marriage, and a subsequent remainder to the right heirs was limited, and a collateral relation only was affected by such act of the trustees, courts of equity have refused to punish the trustees. The reason of the difference is, that in one case the court considers the issue the object of the settlement and within the consideration, while the remainder to the right heirs is merely voluntary. 1 P. Williams, 359–387; 1 Eq. Ab., 385; 2 Cruise, 384.

While it is true that the parties here do not claim under the deed by way of remainder to the right heirs, yet they are not the issue of the marriage; and the same reason for the distinction taken in the cases above, exists for the difference we have stated in the rule of construction when the issue seek a benefit, and where collaterals or devisees under the husband's will, not being issue of the marriage, are seeking aid from a court of equity.

The effect sought to be given to the *habendum* here, is neither to qualify, explain or enlarge the premises within the meaning of the authorities. 4 Cruise, 433–4.

To pass a life estate by the *habendum*, would be repugnant to the premises, and it is the precise case stated by Blackstone as being inadmissable. 2 Black., 297; 2 Bac. Ab., 545; 4 Cruise, 433–5. Where the estate granted in the premises is a fee, and the estate limited by the *habendum* is a life estate, (which really is not the case here), a fee passes. The *habendum* is inconsistent with the premises— inconsistent with the expressed intention of the parties, and uncertain. It is our opinion that it was the actual intention of the husband, and the understanding of the wife, that the husband would divest himself of his entire estate in one-half of his property—that this was the purpose in thus framing the premises of the deed. The word parties in the

*habendum,* we believe, was intended as a substitute for the words Johanna and her heirs in the premises; but from the peculiar phraseology of this and the subsequent clause of the *habendum,* we are inclined to the opinion that the parties thought the effect of such a use of the terms was to give the estate first to the wife, and at her death, to the children; and from the last clause of the *habendum,* we think it was the purpose to pass a fee simple to the wife, in the event there were no children. To pass a fee simple to the wife, under the circumstances, is therefore consistent, in our judgment, with the application of the rules of construction, as well as the actual intention of the parties.

Only one other question remains to be disposed of in this case : The intended effect of this deed was to pass an estate to the wife upon the happening of the marriage.

Under our statute, married women may become seized or possessed of property, real or personal, by bequest, demise, gift, or purchase, during coverture, subject to certain limitations. The standing of the wife, under such a deed as this, is that of a purchaser for value, and we can see no reason why, under our statute, coverture could have operated to have prevented any interest passing which should pass under the deed. But this is immaterial ; nor do we decide this point, as a court of equity will protect her by making the husband a trustee, if necessary, or devise some other method to secure to her such beneficial interest as passes under the deed. The precise case is considered in 2 Hill's Ch. Rep., 5. There the husband, reciting the intended marriage, undertook to convey the property directly to the wife. The court say, " To give effect to this contract at law, the conveyance ought to have been to some third person, as trustee for these uses, but equity presumes that done which ought to have been done ; and in adjusting the rights of the parties in this court, we must suppose that the intended husband and wife had joined in a deed, conveying the property to some third person as trustee."

The decree of the Chancellor being conformable to the views expressed in this opinion, it is affirmed, and the case is remanded for further proceedings in execution of the decree, which were suspended by the appeal. The parties, appellant and appellee, will each pay one-half of the costs attending this appeal.

Mr. Justice HART, being disqualified, did not hear this cause.