**IN RE: ESTATE OF DANIEL ROBERT KNIGHT, also known as D. R. KNIGHT, Deceased.**

22 So. (2nd) 249          January Term, 1945
April 17, 1945          En Banc
Rehearing denied June 13, 1945

*Lilburn R. Railey,* for appellant.

*Jos. M. Cheetham* and *Morrow & Mays* and *B. F. Paty,* for appellee.

BUFORD, J.:

This cause originated in the County Judge's Court of Dade County by petition and amended petition seeking determination as to whom were the heirs at law of Daniel Robert Knight, deceased, to have cancelled letters of administration theretofore issued to Letty S. Knight, the widow of Daniel Robert Knight, and praying for letters of administration to be issued to petitioners or to some one to be designated by them.

There was no allegation or contention that Letty S. Knight was not the lawful wife of Daniel Robert Knight at and prior to the time of his death, nor that she was not the widow of said Daniel Robert Knight, deceased.

The petitioners alleged that,

"2. Your petitioners would further show unto the Court that Daniel Robert Knight, the decedent, and Letty S. Knight,

his wife, were married, so your petitioners are informed and believe, sometime in the month of December, 1913; that prior to said marriage the said Daniel Robert Knight and Letty S. Knight who was then Letty S. Linch, entered into a prenuptial or marriage contract, a copy of which is hereto attached and made a part of this petition, wherein and whereby the said Daniel Robert Knight and Letty S. Linch, in contemplation of and in consideration of the marriage contract and the mutual agreements, one to the other, did agree that each should retain all right and control over their property, which they at that time owned and which they should acquire after their marriage, each retaining the right to handle and dispose of same and each releasing and waiving all right to inherit from the other.

"3. Your Petitioner would therefore show unto the court that having entered into said agreement that the said Letty S. Knight, formerly Letty S. Linch, waived all her right of dower and right to inherit as the widow of Daniel Robert Knight and that she was not entitled to letters of administration.

"4. Your petitioners would further show unto the court that they are the sole heirs and only heirs of the said Daniel Robert Knight, the decedent, being his nieces and grand-nieces and nephews; that the said Daniel Robert Knight at the time of his death had living no brothers and sisters; that prior to his death he had two sisters and one brother, to-wit: Rebecca Knight, Ellen Knight and John Knight; that at the time of the death of the said Daniel Robert Knight all of the sisters and brothers were dead and your petitioners are the surviving descendants of said brother and sisters."

Pursuant to the filing of our opinion and judgment herein on November 7, 1944, petition for rehearing was filed and was granted for the reconsideration of one question, viz:

"May collateral relatives, nieces, grandnieces, and nephews, being outside the influence of the consideration of marriage, maintain a suit claiming under an antenuptial contract of marriage entered into by and between the widow and deceased husband, against the widow?"

We were impelled to pursue this course because this question had been fairly presented in the court below by paragraph 4 of the answer of appellees, to the petition filed in the county judge's court, in which it was alleged:

"4. Answering the fourth paragraph of said petition, respondent denies that petitioners are the sole heirs and only heirs of the said Daniel Robert Knight, the decedent; respondent admits the relationship of petitioners to decedent, as alleged, but denies that by reason of said relationship they are entitled to inherit in preference to the respondent. Respondent admits the remaining allegations contained in said fourth paragraph."

The county judge denied the petition and dismissed it without statement of grounds on which order was made. On appeal to the circuit court the judgment of the county judge was affirmed but apparently without consideration of paragraph 4 of the answer, supra, but on other grounds which we considered and found insufficient in our former judgments of August 1, 1944, and November 7, 1944.

We failed to give due consideration to the question tendered by paragraph 4 of the answer, supra; therefore, we now consider same.

There is nothing in the allegations of the petition to show that the widow was not entitled to the appointment as administratrix. See Sec. 732.44 Fla. Statutes 1941 (same F.S.A.). So the relief prayed in this regard was unwarranted and there was no error on this account in the order dismissing the petition.

Whether or not the petitioners have any standing in court depends upon whether or not the allegations of the petition are sufficient to show that they have inherited an interest in the estate. This question must be determined by reference to our statute of descent and distribution, together with the allegations of the petition. The petition having shown upon its face that Daniel Robert Knight died leaving a surviving spouse, these petitioners could not take under the terms of the statute, Sec. 731.23 Fla. Statutes 1941 (same F.S.A.). Therefore, they have no interest in the estate, unless it appears that under a contract between the parties made for the

benfit of thse collateral relatives the surviving spouse holds the property in trust for them.

Cases like this have arisen in many jurisdictions and the question has been well considered. In the case of Hudnall v. Hamm, 183 Ill. 486, 56 N. E. 172, the facts appeared to be on all-fours with the facts here under consideration. In that case the Illinois court said:

"Counsel for Hudnalls claim under the fourth paragraph of the statute. Had Mary E. T. Taylor died first, or had there been no widow, it is plain they could inherit under this clause, as they were children and descendants of deceased children of Sallie Taylor, the mother of Jeremiah Taylor. But the difficulty with their position is that the statute would make them heirs only in case Taylor left no widow, and he did leave a widow. *It is immaterial whether the widow has assigned, or has barred or estopped herself from taking or not, as their right to inherit does not, under the statute, depend on any act or contract of hers,* but, so to speak, on her non-existence at Taylor's death. They cannot take under the statute and against the statute at the same time. They are not his heirs at law at all, because he left surviving him a widow. If we were at liberty to interpolate words in the statute, and make it read, "When there is no widow who has not released, or who is not barred or estopped by contract, the estate shall descend," etc., the Hudnalls could be declared the heirs; but we have no authority to add to or qualify the statute, or to pervert its plain meaning. Mary E. T. Taylor is no less the widow of Jeremiah Taylor because she executed the antenuptial agreement. She was his lawful wife, and upon his death became his lawful widow, and her antenuptial contract cannot be used to confer heirship upon these appellants, where none is conferred by law. Heirship is not created by contract, but by law only.

"It is insisted by counsel for the Hudnalls that their contention is supported by Crum v. Sawyer, 132 Ill. 443, [24 N. E. 956]; that is, *that the antenuptial agrement had the same effect to make them the heirs as would the death of the widow before the death of her husband. But, in this they are in error. What was there said was in reference* to the ante-

nuptial contract on the rights of the surviving husband and other heirs, where there were other heirs at law of the wife, he being only one of such heirs. It was not held or intimated that the effect of the contract was to make persons heirs at law who were not so by law, but only to enlarge the portions which the other heirs would take." (emphasis supplied).

In Neves v. Scott, 50 U.S. 196, 9 How. 196, 13 L. Ed. 102, affirmed on rehearing, 54 U.S. 268, 13 How. 268, 14 L. Ed. 140, the Supreme Court of the United States said:

"The result of all the cases, I think, will show that if, from the circumstances under which the marriage articles were entered into by the parties, or as collected from the face of the instrument itself, it appears to have been intended that the collateral relatives, in a given event, should take the estate *and a proper limitation to that effect is contained in them,* a court of equity will enforce the trust for their benefit." (underscoring ours.)

The opinion in the case of Caulk v. Fox and wife, 13 Fla. 148 has some definite bearing on the question before us. In that case an antenuptial contract was under consideration and there the Court, inter alia, said:

"The issue of the marriage are no parties to this contest. The husband is dead and there can be no issue. While courts of equity will give a liberal construction to the terms employed in instruments of this character in favor of the issue, when it is possible that the issue may be benefitted upon the presumed intention of the parties (when there is room for a presumption to operate), to provide for the issue, yet we cannot see why this rule, which is the creature of a court of equity, originating under a state of facts where a benefit may accrue to the issue, and to produce that result, would be extended to a case where the party who seeks to vary the terms of the instrument, and who is to derive a benefit is one who claims through the husband, as against the wife, such as one being not a child, and the circumstances such that no issue of the marriage can ever derive a benefit. 1 Baldwin C. C. Rep., 489. The reason ceasing, the rule should cease.

"Upon what principle would a court of equity favor one rather than the other of these parties? Estates limited to

trustees to preserve contingent remainders from the power of the tenant of the preceding particular estate, were introduced in order to secure in family settlements the provisions intended for the benefit of the issue of the marriage against being defeated by the parents, the tenants for life, and courts of equity have always deemed the joining in a conveyance by such trustees to destroy the contingent uses or remainders a breach of trust. If, however, there was no issue of the marriage, and a subsequent remainder to the right heirs was limited, and a collateral relation only was affected by such act of the trustees, courts of equity have refused to punish the trustees. The reason of the difference is, that in one case the court considers the issue the object of the settlement and within the consideration, while the remainder to the right heirs is merely voluntary. 1 P. Williams 359-387; 1 Eq. Ab. 385; 2 Cruise 384. While it is true that the parties here do not claim under the deed by way of remainder to the right heirs, yet they are not the issue of the marriage; and the same reason for the distinction taken in the cases above, exists for the difference we have stated in the rule of construction when the issue seek a benefit, and where collaterals or devisees under the husband's will, not being issue of the marriage, are seeking aid from a court of equity."

See also Merritt, et al., v. Scott, and Beal, administrators, 6 Ga. 563; Borland v. Welch, 162, N. Y. 104, 56 N. E. 556.

The clause of the antenuptial contract upon which the petitioners must rely as the basis for their claim reads as follows:

2. "And in consideration of the aforesaid terms and agreements,—and while the said Lettie S. has her separate estate secured from and against any control, management or debts of said D. R. Knight, he is likewise to have his secured as against hers; and she hereby releases and agrees not to claim what might otherwise become her rights for support and of or for dower or other widow's parts out of the earnings or incomes or properties, real or personal or mixed, now or that may hereafter be of said D. R. Knight *or of his estate,* or as against his right to control, manage, sell, convey, will

or devise his properties or effects, real or personal or mixed, freed from any such aforesaid possible claims."

We read nothing in this paragraph in or by which the widow waived *her right of inheritance* except as to such property which Daniel Robert Knight might have in his lifetime, sold, conveyed, willed or devised and neither of such condition is involved here. She apparently, did waive dower or *other widow's parts.* We think that as used here the words "other widow's parts" are comparable to dower, because the record shows that this contract was executed in the State of Tennessee here the law provides for the setting aside of widow's parts. See Sections 8231 to 8234, inclusive, Code of Tenn. 1932.

Neither the matter of dower nor of widow's parts as to any property which had been sold, conveyed, willed or devised by Daniel Robert Knight is involved here.

It appears from the text in Neves v. Scott, supra, that for collateral heirs to be entitled to take because of the terms of a contract of the sort involved here it must appear from the circumstances under which the marriage articles were entered into by the parties (or as collected from the face of the instrument itself), to have been intended that the collateral relatives in a given event should take the estate and a proper limitation to that effect must be contained it it. That is, in the contract.

As we have heretofore observed, there is nothing in this contract upon which to base such a limitation.

Having reached this conclusion, it follows that we must vacate our former judgments of reversal and affirm the judgment as entered by the county judge and by the circuit court, but not upon the grounds stated by the circuit court for its affirmance of the judgment of the county judge's court.

If a judgment is correct, it will be affirmed, although the reasons given by the lower court for the entry of such judgment may be erroneous.

Affirmed.

BROWN, ADAMS and SEBRING, JJ., concur.

CHAPMAN, C. J., TERRELL and THOMAS, JJ., dissent.