Dorothy Jan DAVISSON, Karen D. Hill, Ruth S. Brewer, Ann McNamar, Pat Wissler, and Ernest Carl Smith, Jr., Appellants,

v.

The INDIANA NATIONAL BANK, Executor of the Estate of Claris B. Smith, Deceased, Suzanne Pursian Smith, and the Indiana National Bank, As Trustee of the Claris B. Smith 1982 Revocable Trust, Appellees.

No. 1–1085A263.

Court of Appeals of Indiana, First District.

June 19, 1986.

Rehearing Denied July 22, 1986.

Alan H. Lobley, Catherine C. Kennedy, Ice, Miller, Donadio & Ryan, Indianapolis, for appellants.

John W. Houghton, Stanley C. Fickle, Barnes & Thornburg, Indianapolis, George B. Davis, Davis & Davis, Greenfield, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellants, Dorothy J. Davisson, Karen D. Hill, Ruth S. Brewer, Ann McNamar, Pat Wissler, and Ernest Carl Smith, Jr. (Contestants), appeal an adverse summary judgment entered by the Hancock Circuit Court in their action to contest a will. The summary judgment was entered solely on the issue of standing. From that judgment Contestants appeal. We reverse.

## STATEMENT OF THE FACTS

Claris B. Smith (Decedent) died on August 2, 1983, and his will, dated July 23, 1982, was admitted to probate on August 20, 1983. Contestants brought this action to contest the will on January 25, 1984, claiming unsoundness of mind, undue influence, duress, and fraud in the execution. Contestant Brewer was a sister of the Decedent, Smith was a brother and Wissler, Davisson, McNamar, and Hill were nieces by a deceased brother and sister. Decedent's wife of six years, Suzanne Pursian Smith (Suzanne), survived as his widow; however, Suzanne and Decedent had executed a premarriage agreement by the terms of which she and Decedent waived any hereditary claim to each other's property. But the agreement did not prevent gifts by one to the other by devise. Decedent died without issue.

Decedent had executed prior wills in 1961, 1972, and 1977. All the wills, including the 1982 will, gave the vast bulk of the estate to a revocable inter vivos trust. Decedent created the trust as a spill-over trust; established with negligible assets but designed to receive additional assets by devise. The trusts contained provisions directing the trustee, upon Decedent's death, to transfer the property to various beneficiaries in designated proportions. Such directions were not contained in the will. On July 23, 1982, Decedent amended his will and the trust. The vast majority of the estate, valued at approximately $3,500,-000.00, went to the trust. By the terms of the July 23, 1982 amended trust, Brewer was to receive $50,000.00; Smith—$50,-000.00; Wissler—$50,000.00; Davisson—$25,000.00; McNamar—$25,000.00; and Hill—$25,000.00. The Indiana National Bank, as Executor and Trustee, disclosed to the above beneficiaries only an edited

copy of the 1982 trust. It revealed, however, that seven unnamed persons, being friends of the Decedent or relatives of his first wife, received bequests totaling $160,000.00, ranging from $10,000.00 to $50,000.00. The Trustee/Executor further revealed that six unnamed persons, being former business employees and associates of Decedent, received 2,563 shares of Holiday Inns, Inc. stock, partnership interests in Northwest Inn Developers, and shares of certain stock in CBS Motel Corp. The residue of the trust went to the widow and the Shriner's Hospitals for Crippled Children.

Contestants sought and were denied discovery of copies of the 1977 trust and complete copies of the 1982 trust. There is evidence that Contestants had been told by Decedent that they would receive a greater share of the estate by the terms of the 1977 trust. Contestants also sought discovery of certain medical records of Decedent and the right to depose the widow. Responses to requests were deferred until after the ruling on standing.

The Executor filed a motion for summary judgment, claiming first that Contestants had no standing to bring an action to contest the will, and second, that no evidence was presented indicating that the will was invalid. The motion was supported by affidavits of subscribing witnesses attesting in effect that Decedent was of sound mind, and was not under any undue influence or duress when he executed the 1982 will. The trial court granted summary judgment on the issue of standing, but did not address the issue of the will's validity.

Pending the hearing on the motion for summary judgment, Contestants sought to amend their complaint to add as a ground for standing that they were beneficiaries under the 1977 trust, which, if it gave them more, would provide standing. This motion was denied. In effect, the trial court decided that collateral heirs have no standing to bring a will contest where there is no issue surviving and where the widow has executed a premarriage agreement by which she foregoes any interest in the estate.

The granting of the motion for summary judgment on the standing issue is the only issue on appeal, though connected with it are subsidiary issues of the denial of discovery of the 1977 and 1982 trusts, and the denial of Contestants' right to amend their complaint. All issues are connected and will be discussed together.

### DISCUSSION AND DECISION

Any "interested person" may contest a will. IND.CODE 29-1-7-17. "Interested person" means an heir, devisee, spouse, creditor, or any other person having a property right in or a claim against the estate of a decedent. IND.CODE 29-1-1-3. That meaning "may vary at different stages and different parts of a proceeding, and must be determined according to the particular purpose and the matter involved." *Id.* "Heirs" are defined as "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession, to the decedent's property upon the death of the decedent unless otherwise defined or limited by the will. *Id.*

The intestate share or other expectancy to which the spouse or other heirs may be entitled may be waived by written contract or agreement. IND.CODE 29-1-2-13. The provisions of marriage shall be sufficient consideration in the case of a premarriage agreement. *Id.* The Indiana Probate Code Study Commission's comment to IND.CODE 29-1-2-13 states that the section is merely declaratory of the common law, and adopts the rule as to expectancies generally set forth in Section 316 of the Restatement of the Law of Property. Section 316(a) of the Restatement provides that a person who has an expectant distribution has the power to relinquish all or any part of that distribution.

Comment f of Section 316 states that the expectant distributee can relinquish his interest only to the source. Where such relinquishment has been made as to the entire interest of an expectant distributee, that distributee is eliminated from a fur-

ther claim to or participation in the estate of the source. RESTATEMENT OF THE LAW OF PROPERTY Sec. 316 comment f (1940). The comment further states that if the relinquishing party is the sole descendant, the collaterals of the source become entitled on intestate succession.[1] An illustration to comment f of Sec. 316 states as follows:

"A owns interest in land and other things, worth $50,000. If A should die forthwith, A's only child B, would take as sole heir at law and next of kin of A. If B were not alive, and A died forthwith, A's brothers C and D would take as heirs at law the next of kin of A. B, in return for a present adequate consideration, executes and delivers to A an otherwise effective release to A of all B's claims in and to all of A's estate on A's death. A dies intestate. C and D receive all of which A died the owner. B receives nothing."

RESTATEMENT ON THE LAW OF PROPERTY Sec. 316 comment f, illustration 6 (1940).

The policy expressed in Section 316 is followed in IND.CODE 32–3–2–3 which is addressed to disclaimers of interest which, after the death of the decedent, may be filed with the executor. Subsection (d) provides:

"If provision has not been made for another devolution, an interest disclaimed under this section devolves as if the disclaimant had predeceased the decedent. A disclaimer under this section relates back for all purposes that relate to the interest disclaimed to a time immediately before the death of the decedent."

The same policy is expressed in IND.CODE 32–3–2–8 as to future interests. Although these two provisions from the Indiana Property Code are not directly in point with the issue at hand, they may be considered in determining legislative intent, as the purposes are the same.

As expressed in the comment to IND. CODE 29–1–2–13, prior to the enactment of

the statutory provisions, the common law permitted premarriage agreements. The comment noted that this section is merely declaratory of the common law. The case of *McNutt v. McNutt* (1888), 116 Ind. 545, 19 N.E. 115, expressive of the common law, is in point here. In *McNutt*, premarriage agreements existed by which the decedent and his widow waived any right to the property of the other. At his death, the intestate decedent was survived by his widow, by his brothers and sisters, and by his nieces and nephews by deceased brothers and sisters. It was argued that collateral relatives cannot enforce the contract, but that only lineal heirs can. The court, emphasizing that each party to the premarriage agreement intended to bar the other from any right to their respective properties, held that the brothers and sisters and nieces and nephews were heirs of the decedent and, as heirs, were entitled to the property. The case stated:

"It is unduly assumed that the law absolutely casts upon the wife an estate in the lands of the husband; whereas it does not undertake to do so where by agreement the parties have fixed the rule which shall govern. The law operates in cases where there is no contract, but does not operate where the parties have for themselves agreed upon the mode in which marital rights shall attach. The law does not assume to override the agreement of the parties, but to furnish a rule where there is no agreement. To be sure, there must be an effective agreement or conveyance; if there is not the law will prevail.

There is little, if any, diversity of opinion upon the general proposition that parties may by contract intercept the line of descent, although there is some conflict as to what must be shown to support the contract. The rule long has been that dower and kindred rights may be excluded by the contract of the parties."

*Id.* at 562, 19 N.E. at 123.

"The argument that the appellant is an heir of [decedent], and, therefore, enti-

---

1. Though the comment discusses relinquishment in regard to *descendants* only, we believe

that the rationale applies to situations where the relinquishing party is the decedent's spouse.

tled to the land, is fallacious. It is very clear that the agreement was meant to exclude her, and that it does exclude her from the inheritance. The object of the agreement was to bar her rights in the land of her husband. This was the plain intention of the parties and that intention must prevail. To award her an interest would be to give her what the contract plainly denies her and thus thwart the intention of the parties and defeat their agreement."

*Id.* at 564, 19 N.E. at 124.

The premarriage agreement in the instant case provided in pertinent part as follows:

"Suzy and C.B. agree that neither of them will acquire ... any right to inherit all or any part of the property of the other as a result of surviving the owner of the property."

The agreement further provided that:

"[I]n the event either of them should die without leaving a valid and effective will, the survivor will not have or receive any interest in the estate of the deceased (as she or he would or may have under the law if this Agreement had not been made), and the property in such estate shall pass to the heirs of such deceased person."

The later cases of *McClain v. McClain* (1962), 133 Ind.App. 645, 183 N.E.2d 842, *on rehearing*, 133 Ind.App. 645, 184 N.E.2d 281, and *Roush v. Hullinger* (1949), 119 Ind.App. 342, 86 N.E.2d 714, followed the principle expressed in *McNutt, supra. Roush, supra*, stated:

"The right of an adult intended husband and wife in contemplation of marriage to intercept a statutory line of descent, or the rights conferred by law, and substitute by contract, or agreement, a rule of inheritance of their own creation, by which their respective rights in the property of each other may be measured or determined, is a well settled principle."

*Id.* at 346, 86 N.E.2d at 715.

▮ In its argument, the Executor concedes that an interested person may contest a will. It also concedes that if Con-

testants were heirs at law or if they were entitled to a greater benefit under a prior will then they would have standing. However, the Executor contends that under IND.CODE 29–1–2–1(a)(4), a surviving widow, where there is no issue surviving, is the heir to the entire estate, and brother and sisters and nieces and nephews are excluded. The Executor, noting that in the instant case the widow survived and no issue existed, concludes with the assertion that heirship cannot be created by the existence of a premarriage agreement which excludes the widow's entitlement on intestate succession. Paradoxically, the Executor concedes that collateral relations can enforce the premarriage agreement, but argues that they have no standing to contest a will. Carried to its logical conclusion, the Executor's argument would permit an escheat where the decedent died intestate, where a premarriage agreement exists which excludes the widow as distributee of the estate should the decedent die intestate, and where only collateral heirs exist. In sum, the Executor argues that a premarriage agreement cannot advance a collateral heir to the status of heirship. It cites the following cases from other jurisdictions to support its view: *In re. Knights Estate* (1945), 155 Fla. 869, 22 So.2d 249; *Hudnall v. Ham* (1899), 183 Ill 486, 56 N.E. 172; *Ryburn v. First National Bank of Mayfield* (1964), Ky., 399 S.W.2d 313; *Annie Gardner Foundation v. Gardner* (1963), Ky.Ct.App., 375 S.W.2d 705; *In re Irwin Estate* (1952), 335 Mich. 143, 55 N.W.2d 769; *Cantor v. Cantor* (1959), 15 Ohio App.2d 148, 174 N.E.2d 304. Our reading of those cases raises some question about their holdings as applicable here. But we shall not explore those distinctions, for such holdings, in our opinion, are at odds with Indiana authority.

The Executor's argument is fundamentally flawed. The very purpose of a premarriage agreement is to limit or exclude a spouse's interest in the decedent's estate either in favor of blood relatives who, in the absence of a surviving spouse, would be heirs, or in favor of persons who would

be beneficiaries under a will. Should we accede to the Executor's argument, the fundamental purpose of the agreement would be defeated in the event of intestacy, and the estate would escheat.

We hold that in the event of intestacy, coupled with the validity of the premarriage agreement, the Contestants here would inherit decedent's property. Thus, since this event is possible, depending upon the vicissitudes of litigation, Contestants have standing.

Ancillary to, and as a part of the principal issue of standing, are the issues of amendment and discovery. Contestants attempted to discover the 1977 trust, all of the 1982 trust, and some of the Decedent's medical records, and to depose the widow. The court denied all attempts, but held discovery of the medical records and the deposition of the widow in abeyance until the resolution of the issue of standing.

 Contestants argue that the record shows that they had been told by the Decedent that a larger portion of his estate would devolve upon them under the 1977 trust and will. Should this be so, that, in and of itself, would confer standing. This set of facts would raise the possibility of contesting the 1982 trust as well as the 1982 will, for if the decedent was incapable of executing a will; he was incapable of executing a trust which was done at the same time. Therefore, the 1977 trust and the 1982 trust are relevant, and the court erred in not permitting them to be discovered.

Though argued in a number of ways, the heart of the Executor's argument is that the validity and terms of the wills and the validity and terms of the trusts are matters wholly apart from each other, and thus the trust instruments are irrelevant in regards to the will contest action. It contends that it is the terms of the trust that have changed over the years, not the terms of the will.

The testamentary vehicle used by the Decedent throughout was a trust with minimal assets to which other assets without

limitation could be transferred by devise. It is the terms of the trust that designate the beneficiaries and the amount each would receive. The will merely named the trust as the devisee or legatee. It is clear that the will is meaningless without consulting the trust. Thus, all matters involved with this testamentary vehicle are relevant on the question of standing. Should the 1977 trust contain provisions for a larger share than the 1982 trust, the Contestants would benefit from a judgment declaring the 1982 will and trust invalid.

Discovery is limited only by relevancy. Ind. Rules of Procedure, Trial Rule 26(B)(1). It does not matter that information sought would be inadmissible at trial so long as the information sought appears reasonably calculated to lead to the discovery of other admissible evidence. *See* 23 I.L.E. *Pleading, Discovery, and Pretrial Practice* Sec. 174 (1970). The trial court thus erred in denying the Contestants the right to discover the 1977 trust and all of the 1982 trust. Contestants need not be content to take the Executor's word as to exactly what the documents contain.

 Under Ind.Rules of Procedure, Trial Rule 15(A) an amendment to a pleading should be allowed "by leave of court or by written consent of the adverse party; and leave of court *shall* be given when justice so requires." (Our emphasis.) The policy in Indiana is to liberally allow amendments to pleadings. 23 I.L.E. *Pleading, Discovery, and Pretrial Practice* Sec. 174 (1970). Amendments should be allowed unless it will result in prejudice to the opposing party. *Criss v. Bitzegaio* (1980), Ind., 420 N.E.2d 1221; *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. We find no prejudice to the estate in an amendment which sets firm facts relating to the matter of standing. We therefore conclude that the trial court abused its discretion in not permitting the plaintiffs to amend their complaint.

For the above reasons, this cause is reversed. The trial court is ordered to vacate

the summary judgment and to grant discovery of the 1977 and the 1982 trusts.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.